**BOSTON EDISON COMPANY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Entergy Nuclear Generation Co., Plaintiff,**

v.

**United States, Defendant.**

**Nos. 99–447C, 03–2626C.**

United States Court of Federal Claims.

Aug. 10, 2012.

Richard J. Conway, Dickstein Shapiro LLP, Washington, D.C., for plaintiff Boston Edison Company. Of counsel were Nicholas W. Mattia, Jr., Dickstein Shapiro LLP, Washington, D.C., and Neven Rabadjija, Associate General Counsel, NSTAR Electric & Gas Corporation, Boston, Massachusetts.

L. Jager Smith, Jr., Jager Smith LLC, Jackson, Mississippi, for plaintiff Entergy Nuclear Generation Co. Of counsel were Alex D. Tomaszczuk, Jay E. Silberg, and Evan D. Wesser, Pillsbury Winthrop Shaw Pittman LLP, McLean, Virginia.

Shari A. Rose, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Stuart F. Delery, Acting Assistant Attorney General, Civil Division, and Jeanne E. Davidson, Director, and Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

The claims of Boston Edison Company ("Boston Edison") and Entergy Nuclear Generation Co. ("Entergy") relate to storage of spent nuclear fuel ("SNF") and have a long history in this court. Boston Edison sold Entergy the Pilgrim Nuclear Power Station in Plymouth, Massachusetts in 1999, and both have sued the United States ("the government") for breach of contract because the Department of Energy ("DOE") has failed in its statutory and contractual obligations to dispose of the plant's spent nuclear fuel. Since Boston Edison instituted suit in 1999 and Entergy filed its claims in 2003, their claims have been the subject of a partial consolidation, six published opinions by this court, two trials, and two appellate decisions by the Federal Circuit. Finally, however, the litigation appears to be nearing resolution and repose, subject to one last spasm.

Entergy and the government filed a stipulation for entry of final judgment in April 2012. Thereafter, because the stipulated terms were appropriate and acceptable, the court duly entered a final judgment reflecting the parties' proposed terms and severed the partial consolidation previously ordered. See Order for Final Judgment, No. 03–2626C, April 25, 2012, ECF No. 218 ("Entergy Judgment Order"). In a strange reversionary twist, the motion currently before the court comprises the government's request that the court reconsider that judgment. See Def.'s Mot. for Recons. & to Alter or Amend the Court's April 25, 2012 Judgment ("Def.'s Mot."). The practical thrust of the government's motion looks to future claims that Entergy and Boston Edison might file when costs are incurred to mitigate the govern-

ment's breach of the still-extant contract. To address the motion while preserving the parties' rights, the court has called upon both Boston Edison and Entergy to respond to the government's contentions, notwithstanding their evident exasperation at the government's effort to recast a stipulated judgment. In addition, the court conducted a comprehensive hearing on July 16, 2012. With the results of those proceedings in hand, the court discusses in some detail the nature of the parties' claims and, as will appear, leaves the final judgment for Entergy in place, dismisses Boston Edison's case without prejudice on prudential grounds, and explicitly preserves and provides for future claims by Boston Edison and Entergy, as contemplated by the *Restatement (Second) of Judgments.*

## BACKGROUND

The facts of this litigation have been fully recounted in numerous prior decisions, so accordingly only a brief account is provided here. *See Boston Edison Co. v. United States,* 658 F.3d 1361 (Fed.Cir.2011) ("*Boston Edison VI* "); *Boston Edison Co. v. United States,* 93 Fed.Cl. 105 (2010) ("*Boston Edison V* "); *Boston Edison Co. v. United States,* 80 Fed.Cl. 468 (2008) ("*Boston Edison III* "); *see also* Joel Singer et al., *2011 Government Contract Law Decisions of the Federal Circuit,* 61 Am. U. L. Rev. 1013, 1097–1101 (2012) (describing and analyzing the Federal Circuit's decision in *Boston Edison VI* ). The only major factual development since those opinions were written has been the Nuclear Regulatory Commission's ("NRC") issuance of a twenty-year renewal of Pilgrim's operating permit. The renewal permit will allow the plant to remain in operation until 2032, when either its license might again be renewed or the plant might be decommissioned. *See* Hr'g Tr. 4:8–22 (July 16, 2012); *see also* NRC, Renewed Facility Operating License No. DPR–35, May 29, 2012 (on file with the court and also available on the NRC's ADAMS Public Documents Interface, at pba-

dupws.nrc.gov/docs/ML0910/ML091040423.-pdf).

On June 17, 1983, Boston Edison entered into a "Standard Contract" with DOE that implemented certain provisions of the Nuclear Waste Policy Act of 1982. *See Boston Edison III,* 80 Fed.Cl. at 469–71. Both the Nuclear Waste Policy Act and the contract made DOE responsible for collecting spent nuclear fuel from the Pilgrim plant no later than January 31, 1998. The government failed to perform at the set time, has not performed since, and is not expected to perform at any foreseeable time in the future. Because the existence of the contract is a necessary condition of the Pilgrim plant's operating license, the contract cannot be terminated, and DOE's non-performance has given rise to damages for partial breach, rather than total breach. *See Boston Edison VI,* 658 F.3d at 1366. DOE will remain liable for future damages as they are incurred. *Id.*

In 1997, Massachusetts enacted legislation requiring regulated utilities "to sell their electricity generation assets and operations or to functionally separate their generation operations from their transmission and distribution operations." *Boston Edison VI,* 658 F.3d at 1364 (citing Mass. Gen. Laws ch. 164, § 1A (1997)). In response, Boston Edison entered into a settlement agreement with the Massachusetts Attorney General establishing a procedure for the company to sell Pilgrim. Through a competitive auction, Boston Edison selected a bid from Entergy and sold Entergy the Pilgrim plant, inventory, fuel, and land for $80 million. Entergy also accepted the decommissioning and SNF storage responsibilities for Pilgrim in return for a decommissioning fund valued at $428 million.[1] A clause in the final purchase agreement gave Boston Edison the right to any claims "related or pertaining to the Department of Energy's defaults under the DOE Standard Contract accrued as of the Closing Date, whether relating to periods prior to or following the Closing Date." *Id.* at 1365. Entergy received rights to all claims post-dating Pilgrim's transfer.

---

1. "The initial decommissioning and storage payment was $471 million, but a portion of the payment was ultimately returned to Boston Edison after the Internal Revenue Service deter-

mined that the transfer of the decommissioning fund was entitled to favorable tax treatment." *Boston Edison VI,* 658 F.3d at 1364 n. 2.

The day before the sale's closing in July 1999, Boston Edison brought suit in this court seeking damages for the government's partial breach of the Standard Contract, alleging that "Pilgrim's value was significantly diminished by DOE's breach, [so] Boston Edison realized significantly less value in the sale." *Boston Edison Co. v. United States,* 67 Fed.Cl. 63, 65 (2005) (*"Boston Edison II"*) (internal quotation marks omitted). In 2003, before that action progressed beyond preliminary stages, Entergy filed suit seeking damages for partial breach since the date of the sale. At the behest of the government, this court partially consolidated Boston Edison's and Entergy's suits in 2005 "for the limited purpose of addressing issues concerning (1) contract formation, (2) contract implementation through the date of sale of the Pilgrim Nuclear Power Station, and (3) Boston Edison Company's diminution-in-value claim and the government's attendant offset claim against Entergy." *Id.* at 67. After consolidating the claims, trial was held and judgment was entered for Boston Edison for $40 million in diminution-in-value costs. This court found that DOE's failure to perform its contractual obligations under the Standard Contract had forced Boston Edison to provide a larger decommissioning fund to Entergy "to account for [post-decommissioning] SNF storage costs stemming from DOE's breach of the Standard Contract." *Boston Edison III,* 80 Fed.Cl. at 491.

After a further trial in 2010, this court entered a $4 million judgment in favor of Entergy for mitigation costs resulting from the government's partial breach following Pilgrim's transfer to Entergy through the end of 2008. Nearly $3 million of that award stemmed from costs associated with the purchase and installation of spent fuel racks, and over $1 million stemmed from a change the NRC made in its fee-related rules as a consequence of DOE's breach, which forced Entergy to pay more in aggregate fees to the NRC. *Boston Edison V,* 93 Fed.Cl. at 139. This court denied the government's claim for an offset or recoupment of Entergy's damages against the damages already awarded to Boston Edison, holding that such an offset, if any, would be collectible only when the plant was actually decommissioned. *See id.*

The Federal Circuit affirmed, reversed, and remanded aspects of this court's 2008 and 2010 judgments for Boston Edison and Entergy. It reversed Boston Edison's judgment for diminution-in-value damages, holding that the damages of DOE's pre-transfer breach cannot be determined until the actual costs of SNF disposal are incurred at the time of decommissioning, even though Boston Edison expended money at the time of sale to add to the decommissioning trust fund. *Boston Edison VI,* 658 F.3d at 1367.[2] The Federal Circuit left to this court the initial determination of "the respective rights of Boston Edison and Entergy relating to any partial or total breach of contract by DOE that postdates the decommissioning of the Pilgrim facility." *Id.* at 1367 n. 4. As for Entergy, its judgment for roughly $3 million in storage costs was affirmed, but the $1 million awarded for the rise in NRC fees was remanded "to account for the decreased share of generic wet storage and decommissioning fees paid by Entergy as a consequence of the NRC's rule change." *Id.* at 1370.

Thereafter, this court and the parties established a schedule and plan for proceedings on remand, agreeing to resolve Entergy's remanded claim for NRC fees before addressing Boston Edison's nascent decommissioning claim. Hr'g Tr. 23:19 to 24:7 (Jan. 27, 2012). Trial was scheduled for June 2012, but prior to commencement of trial, the government and Entergy entered a stipulation for final judgment. The stipulation resolved the NRC-fee issue, reducing the

---

**2.** The Federal Circuit commented that

the estimated value of future damages agreed upon by two private parties should not set the amount of the government's liability for partial breach. While the figure chosen by Boston Edison and Entergy may turn out to be an accurate estimate of the harm caused by DOE if the agency continues to delay performance,

that figure could also prove to be excessive. The purpose of allowing a series of recoveries for partial breach, as opposed to a single recovery for total breach, is to avoid speculation about the quantum of future damages.

*Boston Edison VI,* 658 F.3d at 1367 (citing *Restatement (Second) of Contracts* § 243, cmt. e (1981)).

amount awarded by \$83,075, and requested an entry of final judgment for Entergy "in the uncontested amount of \$4,141,621[.00]" with an award of costs in favor of Entergy "in the uncontested amount of \$27,039.72." Stipulation Between Def. & Pl. Entergy Nuclear Generation Co. for Entry of Final Judgment ("Stip. for Judgment") at 3–4. This court entered final judgment for Entergy according to the terms of the parties' stipulation and consequently severed the partial consolidation of the parties' claims. *See* Entergy Judgment Order at 2. Nonetheless, two months later, the government has moved for reconsideration of that judgment, arguing alternatively that (a) the court erred in severing the cases because the parties' claims remained intertwined and the court should "withhold final judgment in [Entergy's] action until final judgment is entered in Boston Edison's action," or (b) the court erred in not dismissing Boston Edison's case with prejudice at the time of severance because the Federal Circuit held that Boston Edison has no claim for relief. Def.'s Mot. at 7. The government has chosen the motion as a procedural device for, among other things, pushing forward the question of the proper disposition of Boston Edison's nascent claim.

## STANDARDS FOR DECISION

### A. *Motion for Reconsideration*

■ The government's motion requests that the court reconsider and amend its judgment under Rule 59 of the Rules of the Court of Federal Claims ("RCFC"). In relevant part, the rule provides that "[a] motion to alter or amend a judgment must be filed" within the appropriate time and that "[t]he court may, on motion, grant … a motion for reconsideration … upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States." RCFC 59(a)(1)–(1)(C), (e). "The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." *Yuba Natural Res., Inc. v. United States,* 904 F.2d 1577, 1583 (Fed.Cir.1990) (citing *Gelco Builders & Burjay Constr. Corp. v. United States,* 369 F.2d 992, 1000 n. 7 (Ct.Cl.1966)). "Motions for reconsideration must be supported 'by a

showing of extraordinary circumstances which justify relief.'" *Caldwell v. United States,* 391 F.3d 1226, 1235 (Fed.Cir.2004) (quoting *Fru–Con Constr. Corp. v. United States,* 44 Fed.Cl. 298, 300 (1999), *aff'd,* 250 F.3d 762 (Fed.Cir.2000) (unpublished table decision)). Those circumstances include an intervening change in controlling law, newly discovered evidence, clear legal error, or manifest injustice. 12 James Wm. Moore et al., *Moore's Federal Practice* § 59.30[5][a][i] (3d ed. 2012); *Delaware Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC,* 597 F.3d 1374, 1383 (Fed.Cir.2010) (same) (applying 11th Circuit law); *Bishop v. United States,* 26 Cl.Ct. 281, 286 (1992) (same) (citing *Weyerhaeuser Corp. v. Koppers Co.,* 771 F.Supp. 1406, 1419 (D.Md.1991)). To prevail on grounds of legal error, "the movant must point to a manifest error of law or mistake of fact." *System Fuels, Inc. v. United States,* 79 Fed.Cl. 182, 184 (2007), *aff'd in part and rev'd in part on other grounds,* 457 Fed. Appx. 930 (Fed.Cir.2012). Similarly, "[w]here reconsideration is sought due to manifest injustice, the moving party can only prevail if it demonstrates that the injustice from the case is apparent to the point of being almost indisputable." *Ak–Chin Indian Cmty. v. United States,* 85 Fed.Cl. 636, 638 (2009) (quoting *Shirlington Limousine & Transp., Inc. v. United States,* 78 Fed.Cl. 27, 31 (2007) (internal quotation marks omitted)).

### B. *Motion to Dismiss*

Alternatively, the government's motion argues that the court has erred in failing to dismiss in Boston Edison's complaint. Jurisdiction is not at issue. Boston Edison's claim for breach of contract falls squarely within this court's jurisdiction under the Tucker Act "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). *See Boston Edison Co. v. United States,* 64 Fed.Cl. 167, 174–79 (2005) ("*Boston Edison I*") (upholding the court's subject matter jurisdiction to

hear Boston Edison's claims). Although the government contends that the Federal Circuit fully and completely disposed of Boston Edison's claim and that dismissal is warranted as a result, the court also will consider whether Boston Edison's remaining claim for damages is premature and must await future events that would engender ascertainable damages.[3]

## ANALYSIS

### I. The Government's Motion for Reconsideration

While the government's motion for the court to reconsider its entry of final judgment in favor of Entergy does not specify the particular grounds upon which reconsideration is justified, the motion appears to be founded on contentions of clear error or manifest injustice. The government argues, first, that it was error for the court to sever the partial consolidation of Boston Edison's and Entergy's actions because their claims against the government remain intertwined. Def.'s Mot. at 2–3. Second, the government argues that it was error for the court not to dismiss Boston Edison's case in accord with the Federal Circuit's mandate, as the government construes that mandate. *Id.* at 4–7.

■ Given the posture of this litigation, the government's motion is strangely discordant, odd, and puzzling. Four months ago, in April 2012, Entergy and the government represented to the court that they desired a final judgment in the Entergy case. In their joint stipulation for entry of final judgment, they stated that "*all contested issues in this case[, i.e., No 03-2626C,] have been fully resolved.*" Stip. for Judgment at 1 (emphasis added). They also stated that "[p]ayment of the stipulated judgment . . . shall act as a full and complete discharge and release to the United States for all of E[ntergy]'s claims in this action." *Id.* at 2. The court followed the stipulation to the letter, entering final judgment in favor of Entergy and awarding

damages and costs in the amounts agreed upon by the parties. *See* Entergy Judgment Order. The court also noted in its order that the entry of final judgment would have its natural legal consequences: "Entry of final judgment in No. 03-2626C[, *i.e.,* Entergy's action,] will terminate that action and sever the partial consolidation previously ordered for Nos. 99–447C[, *i.e.,* Boston Edison's action,] and 03–2626C." *Id.* at 2. For the government now to suggest that the final judgment was in clear error is, as the court noted at the hearing on the pending motion, so divergent from the Stipulation for Judgment as to appear disingenuous or outlandish. *See* Hr'g Tr. 22:20–21, 31:21–25, 32:14–16 (July 16, 2012).

In light of the fact that the court did precisely what the government and Entergy asked it to do in entering final judgment for Entergy, it is extremely difficult for the government now to argue that the court committed "a manifest error of law or mistake of fact." *System Fuels, Inc.,* 79 Fed.Cl. at 184 (quoting *Bannum, Inc. v. United States,* 59 Fed.Cl. 241, 243 (2003)). There has been no intervening change in the law, no newly discovered evidence, and it certainly cannot be manifest injustice or clear error for the court to enter a valid judgment to which a party has voluntarily agreed. *Cf. Asberry v. United States Postal Serv.,* 692 F.2d 1378, 1380 (Fed.Cir.1982) ("Those who employ the judicial . . . process to attack a settlement through which controversy has been sent to rest bear a properly heavy burden." (citing *Callen v. Pennsylvania R.R. Co.,* 332 U.S. 625, 630, 68 S.Ct. 296, 92 L.Ed. 242 (1948))); *cf. also Doucet v. Department of the Navy,* 63 Fed.Appx. 512, 514 (Fed.Cir.2003) ("Amazingly, [appellant] now continues to prosecute his appeal in direct opposition to his agreement without even an allegation that the settlement agreement he knowingly and voluntarily signed is invalid."). Consequently, to the extent the government requests that the court reconsider the judgment entered in

---

3. Boston Edison previously also asserted breach-related claims for mitigation damages on a contemporaneous basis associated with projected costs to store spent nuclear fuel at Pilgrim. After trial of those claims, however, the court concluded that Boston Edison's proofs did not demonstrate that the projected costs and attendant risks of DOE's continuing failure to perform under the contract affected the purchase price of the plant apart from the amount paid into the decommissioning trust fund. *Boston Edison III,* 80 Fed.Cl. at 492–95.

favor of Entergy, the government's motion is denied.

■ As for the government's argument that it was error for the court not to dismiss Boston Edison's case, that proposition is also peculiar. The stipulation between Entergy and the government could not have and did not purport to bind Boston Edison in any fashion. Thus, the court is at a loss to see how the court's entry of judgment in the Entergy case could have any bearing on Boston Edison. When pressed on this issue, the government responded with sophistry, asserting that it was not "incumbent upon the government to file a motion to dismiss every time it secures a complete reversal of a party's case. The further proceedings that were required in this instance w[ere] only for the [c]ourt to dismiss Boston Edison's case. Every time the government secures a reversal, it need not run to the [c]ourt and then file a motion to dismiss." Hr'g Tr. 7:4–11 (July 16, 2012).

This response is wholly unsatisfactory. First, in January of this year, the court and the parties reached a consensus on a plan to address the relatively minor remanded issue in Entergy's case, with the court then indicating that it would refrain from considering Boston Edison's case absent action from the parties. Hr'g Tr. 23:21–24 (Jan. 7, 2012). Thus, for months the government has known that it would need to take affirmative steps to secure any ruling by the court on Boston Edison's complaint.

Second, the government's interpretation of the Federal Circuit's opinion is incorrect. This topic also was addressed at the hearing held in January. See Hr'g Tr. 23:9–11 (Jan. 7, 2012). The Federal Circuit did not reverse the judgment in favor of Boston Edison in a manner that fully and finally addressed its claims. To the contrary, as discussed more fully *infra* in part III, the Federal

Circuit recognized that Boston Edison has a nascent claim for decommissioning costs and implicitly remanded to this court the adjudication of that claim. See *Boston Edison VI*, 658 F.3d at 1367 n. 4. Thus, as part of the court's duty to decide the issue "in the first instance," in the Federal Circuit's words, *id.*, the court has the responsibility to determine the disposition of Boston Edison's claim. Therefore, if the court does dismiss Boston Edison's case, it will not be because such action was mandated by the Federal Circuit; rather, it will be because the court has "address[ed] that aspect of the parties' rights and obligations," *id.*, and determined dismissal to be the proper course.

## II. Intertwining

Although the government's motion is unavailing in accord with the standards for reconsideration of a judgment, the court may and does construe the government's arguments as an implicit motion to dismiss Boston Edison's complaint. Directly pertinent to that issue is the relationship between the actions brought by Boston Edison and Entergy. If the plaintiffs' claims remain intertwined, then dismissal would be improper. See *Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8–10, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). Drawing on that general principle, the government contends that the court erred in severing the previously partially consolidated claims of Entergy and Boston Edison because an "action cannot be maintained against an obligor ... unless all persons entitled to performance are joined." Def.'s Mot. at 2. Contrastingly, Boston Edison maintains that the court properly severed its claim for costs associated with decommissioning Pilgrim from Entergy's claims for mitigation costs arising from partial breaches occurring prior to decommissioning. Boston Edison's Resp. to Def.'s Mot. ("Boston Edison's Resp.") at 5–6.[4]

---

4. Both parties' arguments center on the applicability or not of compulsory joinder, which requires joinder of parties when an action would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." RCFC 19(a)(1)(B)(ii). However, this court never joined Boston Edison and Entergy as parties to a single action. Instead, it ordered a partial consolidation of com-

mon issues in their actions. *Boston Edison II*, 67 Fed.Cl. at 67; see Charles Alan Wright et al., *Federal Practice and Procedure* § 2382 (3d ed. 2012) (One type of consolidation occurs "[w]hen several actions are ordered to be tried together but each retains its separate character and requires the entry of a separate judgment. This type of consolidation does not merge the suits into a single action, or cause the parties to one

■ This court has broad discretion to order consolidation of cases involving common questions of law or fact. *See* RCFC 42(a); *Cienega Gardens,* 62 Fed.Cl. at 32. To determine whether or not consolidation is appropriate, the risks of prejudice and possible confusion are weighed against the risk of inconsistent adjudication of common issues and the burden on parties and available judicial resources. *Cienega Gardens,* 62 Fed.Cl. at 31. Consolidation promotes judicial economy where otherwise the court would be called on to decide the same issues more than once, or where its decision would determine issues for multiple cases. *See Boston Edison Co. v. United States ("Boston Edison IV"),* 299 Fed.Appx. 956, 958 (Fed.Cir.2008). Further, consolidation may be necessary to prevent exposing a defendant to inconsistent liabilities. *See Vt. Yankee Nuclear Power Corp. v. Entergy Nuclear Vt. Yankee, LLC,* 346 Fed.Appx. 589, 591 (Fed.Cir.2009) (holding that claims for damages which, pursuant to a purchase sale and agreement, only one party could recover, were "too intertwined" to be brought separately).

■ Entergy's claims resolved by the stipulation and resulting judgment are not intertwined with Boston Edison's case because Entergy's action pertains only to causes of action that are unrelated in scope and time to Boston Edison's claim. Consistent with the procedural history of the litigation, the potentially intertwined aspect of the parties' claims is solely that which relates to decommissioning costs. When the court partially consolidated Boston Edison's and Entergy's actions, the consolidation was expressly limited to "issues concerning (1) contract formation, (2) contract implementation through the date of sale of the Pilgrim Nuclear Power Station, and (3) Boston Edison Company's diminution-in-value claim and the government's attendant offset claim against Entergy." *Boston Edison II,* 67 Fed.Cl. at 67. None of these consolidated issues concerns Entergy's claims for ongoing SNF storage

costs or NRC fees, which claims were the sole bases for Entergy's final judgment. Instructively, after the first trial, the court had entered a final judgment under RCFC 54(b) only on Boston Edison's claim. *See Boston Edison III,* 80 Fed.Cl. at 496. On appeal, however, the Federal Circuit acted to vacate and remand that judgment on the ground that Boston Edison's decommissioning claim might still have had a role to play in Entergy's then-untried case, specifically as it pertained to a government offset against Entergy. *See Boston Edison IV,* 299 Fed.Appx. at 957 ("The Court of Federal Claims rejected the United States' argument that it should decide that any judgment entered in favor of Entergy should be offset by any judgment entered in favor of Boston Edison, stating that such issues might be considered in the case involving Entergy."). This assumption was reasonable at the time because none of Entergy's claims had yet been tried, whether related to decommissioning or mitigation costs. After the benefit of trial in Entergy's case, however, it became evident that Entergy's breach-related claims for costs of storing spent nuclear fuel and increased NRC fees were legally and factually unrelated to Boston Edison's decommissioning claim:

> The $40.03 million Entergy received to cover post-operational SNF storage costs represents compensation for an injury distinct from that which the re-racking projects were intended to mitigate. That money is currently inaccessible to Entergy to cover its mitigation costs, and will remain inaccessible until it begins shutdown.... Therefore, the government may not claim a recoupment for the $40.03 million trust fund amount at this time.

*Boston Edison V,* 93 Fed.Cl. at 138–39.

The Federal Circuit adopted this distinction on appeal, maintaining the delineation of the parties' claims. First, the Federal Circuit expressly stated that it was not determining the parties' post-decommissioning rights. *Boston Edison VI,* 658 F.3d at 1367

---

action to be parties to another."). Nonetheless, many of the concerns that inform a court's judgment when evaluating the necessity of joinder under RCFC 19 also come into play when considering consolidation under RCFC 42, and the court will so construe the parties' arguments.

*See Cienega Gardens v. United States,* 62 Fed.Cl. 28, 31 (2004) (listing as one benefit of consolidation the amelioration of "the risk of inconsistent adjudication of common factual and legal issues" (quoting *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1285 (2d Cir.1990))).

n. 4. Second, the Federal Circuit without difficulty split its disposition of the parties' several claims, reversing and implicitly remanding Boston Edison's claim for decommissioning costs while affirming Entergy's claim for SNF storage costs and remanding Entergy's NRC-fee claim solely for a recalculation. *See id.* at 1367 & n. 4, 1370. The Federal Circuit did not suggest that judgment on Entergy's SNF-storage-cost and NRC-fee claims must await disposition of Boston Edison's claim. To the contrary, the court's affirmance of Entergy's storage-cost claim rendered that claim final and beyond this court's power to affect. *See Amado v. Microsoft Corp.,* 517 F.3d 1353, 1360 (Fed. Cir.2008) ("[T]he mandate rule precludes reconsideration of any issue within the scope of the judgment appealed from.").

The government has suggested that, despite the explicit delineation between Entergy's claim for mitigation costs and Boston Edison's claim for decommissioning costs, an award of damages on the former will somehow affect the latter. *See* Hr'g Tr. 23:12–22 (July 16, 2012). For this proposition, the government relies on the principles of contract assignment and joinder found in the *Restatement (Second) of Contracts* § 326(2), 7 *Federal Practice and Procedure* § 1613, and *Texas San Juan Oil Corp. v. An–Son Offshore Drilling Co.,* 194 F.Supp. 396 (S.D.N.Y.1961). These authorities refer to contractual arrangements where an assignor has retained an interest in the assignee's claim. In such an instance, if the assignee brings suit against the obligor, the assignor must be joined so that its interest in the dispute is adequately represented.

Those principles of contract assignment and joinder do not apply here. Boston Edison has retained no interest in Entergy's SNF-storage and NRC-fee claims. The final purchase agreement reached between Entergy and Boston Edison gave the right to Boston Edison to bring "any claims related or pertaining to the Department of Energy's defaults under the DOE Standard Contract accrued as of the Closing Date, whether relating to periods prior to or following the Closing Date." *Boston Edison VI,* 658 F.3d at 1365 (internal quotation marks omitted).

Contrastingly, Entergy gained rights to claims accruing after the Closing Date. *Id.* Payment of NRC fees and costs associated with Entergy's mitigation efforts, including procurement of materials and capital expenditures, are claims arising after the Closing Date, and as such are matters in which Boston Edison has no interest. *Id.* at 1367–70; *cf. Vermont Yankee Nuclear,* 346 Fed.Appx. at 590–91 (holding that because the parties sought the same SNF re-racking and storage costs, the possibility of double recovery or inconsistent judgments required consolidation). Because Boston Edison's claim now relates solely to decommissioning costs, and not in any respect to ongoing costs of handling and storing SNF during operations, consolidation is not only unnecessary, but may even be improper. *See* 7 *Federal Practice and Procedure* § 1613 ("An assignor of rights and liabilities under a contract generally is not needed for a just adjudication of a suit brought by the assignee. Indeed, in most cases the assignor would not even be a proper party inasmuch as the assignor may have lost the right to bring an independent action on the contract by virtue of the assignment." (internal footnote omitted)).

As the Federal Circuit intimated, *see Boston Edison VI,* 658 F.3d at 1367 n. 4, the parties' remaining claims will again become intertwined at the time of decommissioning. For now, Entergy's claims resolved by stipulation and reflected in the entry of final judgment do not pertain to Boston Edison in any way. As described below, any contingent claim by the government against Entergy depends solely on the disposition of Boston Edison's nascent decommissioning claim. Therefore, the court had compelling grounds to sever the partial consolidation of the cases and enter final judgment for Entergy.

### III. Boston Edison's Claim for Decommissioning Costs

#### A. *The Nature of Boston Edison's Claim*

The government contends that "the Federal Circuit rejected the *sole claim asserted by Boston Edison,*" with the result that this court must dismiss Boston Edison's claim with prejudice. Def.'s Reply in Support of Def.'s Mot. ("Def.'s Reply") at 4. Boston Edison responds that the Federal Circuit,

"recognizing the continued viability of B[oston Edison]'s claim for decommissioning costs, ... only 'reversed' judgment for [its] diminution in value claim; the Circuit did not 'reverse and dismiss' B[oston Edison]'s entire case." Boston Edison's Resp. at 9.

As originally presented to this court, Boston Edison's claim was for "actual damages it ha[d] already suffered as a result of the diminished value that Entergy paid to Boston Edison due to DOE's breach." *Boston Edison III*, 80 Fed.Cl. at 488 (emphasis removed). On appeal, the Federal Circuit rejected that characterization of the claim, reasoning that "the estimated value of future damages agreed upon by two private parties should not set the amount of the government's liability for partial breach." *Boston Edison VI*, 658 F.3d at 1367. Instead, the Federal Circuit recast Boston Edison's claim and the damages that may flow from it. The appellate court acknowledged that Boston Edison had suffered a present injury from DOE's breach, but it also noted that the damages attributable to that injury were not yet ascertainable: "[b]ecause of its highly speculative nature, a claimant may not recover at the time of the first suit for partial breach, prospective damages for anticipated future nonperformance *resulting from the same partial breach.*" *Id.* at 1366 (alteration in original) (emphasis added) (quoting *Indiana Mich. Power Co. v. United States*, 422 F.3d 1369, 1376 (Fed.Cir.2005)). As a result, the Federal Circuit held that the damages for Boston Edison's decommissioning responsibilities would be "recoverable only in subsequent actions commenced after the government's *continued breach of contract* results in further damages." *Id.* at 1367 (emphasis added).

■ The Federal Circuit's opinion illustrates the difference between accrual of claims for total breach and partial breach. In broadest terms, "a cause of action accrues when all events necessary to state a claim have occurred." *Chevron U.S.A., Inc. v. United States*, 923 F.2d 830, 834 (Fed.Cir. 1991) (citing *Kinsey v. United States*, 852 F.2d 556, 557 (Fed.Cir.1988)). In a total-breach setting, "a cause of action accrues when the breach occurs," *Alder Terrace, Inc.*

*v. United States*, 161 F.3d 1372, 1377 (Fed. Cir.1998) (quoting *Manufacturers Aircraft Ass'n v. United States*, 77 Ct.Cl. 481, 523 (1933)), because, by definition, the claim "is one for damages based on all of the injured party's remaining rights to performance under the contract," *Restatement (Second) of Contracts* § 236 cmt. b. Contrastingly, in a partial-breach setting, the breach and damages have a temporal element. For a partial breach, "the award is limited to damages incurred as of the time of suit, but ... subsequent suits may be brought as further damages are incurred." *Boston Edison VI*, 658 F.3d at 1366 (citing *Indiana Mich.*, 422 F.3d at 1376–78).

■ The Federal Circuit applied principles of partial breach to establish that Boston Edison has suffered an injury springing from the government's pre-transfer breach. Rights flowing from that injury remain Boston Edison's because DOE defaulted before the transfer of the Pilgrim plant to Entergy, and Boston Edison expressly retained rights to claims "related or pertaining to the D[OE]'s defaults under the DOE Standard Contract accrued as of the Closing Date, whether relating to periods prior to *or following* the Closing Date" of the contract with Entergy. *Boston Edison VI*, 658 F.3d at 1365 (emphasis added). As the court noted at the hearing on the pending motion, "[a]ccrual has a different meaning in different contexts." Hr'g Tr. 13:19–20 (July 16, 2012). The use of the word "accrued" in the contract for sale of Pilgrim should not be read so as to foreclose Boston Edison from asserting a claim for decommissioning costs in the future. First, the contract provides that such claims may arise after the contract's closing date. Second, as discussed above, a partial breach has two necessary accrual events. The first is the breach. The second is the incurring of actual present damages from the breach. When the word "accrual" or "accrue" is used in partial-breach cases, it typically connotes that both the first and the second events have occurred. *See Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268, 1282 (Fed.Cir.2008) ("[S]ubsequent claims accrue *for the purposes of the statute of limitations* at the time such damages are

incurred." (alteration in original) (emphasis added) (quoting *Indiana Mich.*, 422 F.3d at 1378)); *Tennessee Valley Auth. v. United States*, 60 Fed.Cl. 665, 678 (2004) ("[Plaintiff]'s future claims for its future damages should, therefore, be considered to accrue *for purposes of the statute of limitations* at the time such damages are incurred." (emphasis added)). In short, Boston Edison's claim is not yet assertable in court because of "the significance of timing in the partial breach setting." *Boston Edison VI*, 658 F.3d at 1367. That is, while the foundational elements of Boston Edison's cause of action for breach of contract were established when DOE first breached the contract, the uncertainty of damages inherent to partial-breach cases counsels against allowing a current case to collect those prospective damages. *See id.* (citing *Restatement (Second) of Contracts* § 243 cmt. e). Thus, Boston Edison's claim for decommissioning costs is extant, but it will fully mature only when particular mitigating costs are expended at and on decommissioning.

### B. *The Federal Circuit's Implicit Remand*

Because the Federal Circuit recast rather than rejected Boston Edison's claim, more is required of the court than a "purely ministerial" dismissal of Boston Edison's complaint. *See Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1483 (Fed.Cir.1998). Contrary to the government's interpretation, *see* Def.'s Mot. at 4–6, the Federal Circuit's opinion left to this court the initial decision of how to adjudicate Boston Edison's case. The Federal Circuit wrote:

> We do not decide the respective rights of Boston Edison and Entergy relating to any partial or total breach of contract by DOE that postdates the decommissioning of the Pilgrim facility. The trial court did not address that aspect of the parties' rights and obligations under the contract between them, and *we decline to do so in the first instance.*

*Boston Edison VI*, 658 F.3d at 1367 n. 4 (emphasis added). This reservation is an implicit remand to this court to determine the "respective rights of Boston Edison and

Entergy" as they were recast by the Federal Circuit.

Such a delegation is typical when, in light of an appeal's modification of the law of the case, new factual or legal arguments may be asserted by the parties. *See United States v. Shotwell Mfg. Co.*, 355 U.S. 233, 245, 78 S.Ct. 245, 2 L.Ed.2d 234 (1957); *see also, e.g., Hartford Accident & Indem. Co. v. Stone*, 996 F.2d 317, 1993 WL 96874, at *6 (Fed.Cir. Apr. 5, 1993) (unpublished table decision). In this instance, the court could not have addressed the "respective rights of Boston Edison and Entergy" as the Federal Circuit defined them, because such rights are different from those that arose under the court's initial understanding of Boston Edison's claim. Boston Edison's trial focused on the diminution of value of the Pilgrim plant as of 1999. *See Boston Edison III*, 80 Fed. Cl. at 488–96. However, the Federal Circuit has now specified that the damages from DOE's breach cannot be determined until Pilgrim's decommissioning in 2032 or later. Thus, it is no surprise that the Federal Circuit would remit to this court the determination of the parties' post-decommissioning rights, for those rights had not previously been the focus of any disputed issue before this court. The appellate court's implicit remand follows instrumentally from its new characterization of Boston Edison's claim.

The government makes much of the fact that the appellate court reversed and remanded Entergy's claim for NRC fees while it simply "reversed" Boston Edison's claim. *See* Def.'s Mot. at 5–6 (citing *Boston Edison VI*, 658 F.3d at 1363–64, 1367, 1370). According to the government, that terminology comprises a mandate that this court must summarily dismiss Boston Edison's complaint. The so-called "mandate rule" directs that "issues actually decided [on appeal]— those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court—are foreclosed from further consideration." *Amado*, 517 F.3d at 1360 (alteration in original) (quoting *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed.Cir.1999)). The Federal Circuit has explained that "[i]nterpretation of an appellate mandate entails more than

examining the language of the court's judgment in a vacuum.... [T]he nature of the district court's remaining tasks is discerned not simply from the language of the judgment, but from the judgment in combination with the accompanying opinion." *Exxon Chem.*, 137 F.3d at 1483 (citing Fed. R.App. P. 41(a)).

More specifically, the Federal Circuit has cautioned against reading too much into a judgment of reversal that omits a remand. Particularly instructive on this point is *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475. In *Exxon Chemical*, a patent case, the Federal Circuit reversed, without explicitly remanding, a jury verdict in Exxon's favor on a literal infringement theory. The district court interpreted the Federal Circuit's mandate as prohibiting the grant of a new trial, even on infringement under the doctrine of equivalents. On appeal of this decision, the Federal Circuit reversed, explaining that "[b]ecause our prior opinion was confined to the issue of literal infringement, we hold that the mandate did not deprive the district court of the power to grant Exxon's motion for a new trial on infringement under the doctrine of equivalents." *Id.* at 1477. In so deciding, the court cited precedent from the Supreme Court and the Ninth Circuit holding that "a judgment [of reversal] that does not specifically provide for a remand is not necessarily incompatible with further proceedings to be undertaken in the [trial] court." *Id.* at 1483. Instead, in the situation before the *Exxon* court,

> [t]he exclusion of an explicit remand in the first *Exxon* opinion was correct as it pertained to the issue on appeal, *i.e.*, literal infringement, and the mandate prohibited the district court from granting a new trial on that issue. Read in light of the accompanying opinion, however, the judgment did not deprive the district court of authority to consider Exxon's motion for a new trial on infringement under the doctrine of equivalents.

*Id.* at 1484. Just as in Exxon, here the Federal Circuit has foreclosed further litigation on one issue: the viability of a present claim by Boston Edison under a diminution-in-value theory. *See Boston Edison VI*, 658

F.3d at 1367. The mandate extends no further in that respect, and an implicit remand exists for outstanding issues, including Boston Edison's nascent claim for decommissioning costs. *See Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168–69, 59 S.Ct. 777, 83 L.Ed. 1184 (1939) (Frankfurter, J.) (holding that a judgment that does not specifically provide for a remand is not necessarily incompatible with further proceedings to be undertaken in the district court).

### C. Ascertainable Damages

Although Boston Edison has suffered injury from DOE's breach of contract, under the Federal Circuit's holding, the damages from that breach will not be ascertainable until the decommissioning of the Pilgrim plant. The quantum of those damages will depend upon uncertain or contingent future events. Prudential considerations point toward a disposition of Boston Edison's claim that does not leave its action moldering on the court's docket until decommissioning costs actually are incurred, probably years in the future.

Because presentation of Boston Edison's claim "must await a more concrete setting," *Molins PLC v. Quigg*, 837 F.2d 1064, 1068 (Fed.Cir.1988), it should be dismissed. *See L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1530 (Fed.Cir.1995) (A trial court "has the inherent power to 'control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants.' Incident to this power is the court's ability to dismiss a lawsuit." (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936), and citing *Dynes v. Army Air Force Exch. Serv.*, 720 F.2d 1495, 1499 (11th Cir.1983))).

This dismissal is without prejudice. A dismissal of an inchoate claim for prudential reasons is without prejudice:

> A valid and final personal judgment for the defendant, which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied, unless a second action is precluded by operation of the substantive law.

*Restatement (Second) of Judgments* § 20(2) (1982); *see also id.* § 20(1)–(1)(b) ("A personal judgment for the defendant, although valid and final, does not bar another action by the plaintiff on the same claim . . . [when] the court directs that the plaintiff be nonsuited (or that the action be otherwise dismissed) without prejudice."). Here, of course, the "operation of the substantive law" does not preclude a later suit by Boston Edison. To the contrary, it explicitly provides for it. *See Boston Edison VI*, 658 F.3d at 1367 (damages from a partial breach "are recoverable . . . in subsequent actions commenced after the government's continued breach of contract results in further damages"). And as specified in *Indiana Michigan*, the statute of limitations will not begin to run on Boston Edison's claim until the time the corresponding damages are actually incurred. 422 F.3d at 1378; *see also Tennessee Valley Auth.*, 60 Fed.Cl. at 678 (same).

Alternatively and additionally, the court adopts the exceptions to the rules of merger and bar set out in the *Restatement (Second) of Judgments* § 26(1)(b) and (e). In accord with Paragraph (1)(b) of Section 26, the court expressly reserves Boston Edison's right to bring a second action when and if breach-mitigating costs are incurred from the decommissioning fund.[5] To the same end, the court also invokes Paragraph 26(1)(e).[6] *See Tennessee Valley Auth.*, 60 Fed.Cl. at 678 & n. 15.

### CONCLUSION

For the reasons stated, the government's motion for reconsideration of the court's April 25, 2012 judgment is DENIED. The final judgment entered April 25, 2012 in Entergy Nuclear Generation Co.'s action, No. 03–2626C, is upheld without alteration or amendment.

Boston Edison's complaint in No. 99–447C is DISMISSED without prejudice and with leave to refile when costs to mitigate DOE's

breach of the Standard Contract are incurred on decommissioning Pilgrim. The clerk will enter judgment in accord with this disposition.

No costs in No. 99–447C.

It is so ORDERED.

---

5. That paragraph provides that a valid and final judgment on a claim does not extinguish a future claim when "[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action."

6. That paragraph provides that a judgment on a claim does not extinguish future claims when, "[f]or reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option . . . to sue from time to time for the damages incurred to the date of suit, and chooses [that] course."