MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2024 ME 2
Docket:         And-21-355
Argued:         June 6, 2022
Decided:        January 11, 2024

Panel:          MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ., HJELM, A.R.J., and
                HUMPHREY, A.R.J.*
Majority:       JABAR, HORTON, CONNORS, and LAWRENCE, JJ.
Dissent:        HJELM, A.R.J., MEAD, J., and HUMPHREY, A.R.J.

CHARLES D. FINCH

v.

U.S. BANK, N.A.

HORTON, J.

[¶1] U.S. Bank, N.A., appeals from a judgment entered in the Superior Court (Androscoggin County, *Stewart, J.*) ordering the Bank to discharge its mortgage held as security on a loan to Charles D. Finch. The judgment implemented a previous order of the court (*Stanfill, J.*) in favor of Finch based on our decision in *Pushard v. Bank of America, N.A.*, 2017 ME 230, ¶ 36, 175 A.3d 103.

[¶2] In *Pushard*, we considered the effect of a foreclosure statute that prohibits a residential mortgage lender from accelerating the balance due on

---

* Although not present at oral argument, Justice Hjelm and Justice Humphrey participated in this appeal. *See* M.R. App. P. 12(a)(2).

2

the note or enforcing the mortgage unless the lender has first issued to the borrower a notice of default that complies with the statute. *Id.* ¶¶ 22-33; *see* 14 M.R.S. § 6111 (2023)[1] (providing that "[a] mortgagee *may not accelerate* maturity of the unpaid balance of the obligation or *otherwise enforce the mortgage* . . . until at least 35 days after" issuing a written notice of default to the borrower in compliance with the statute (emphasis added)). However, despite the plain statutory prohibition on acceleration without compliance with the statute, we held that the lender had accelerated the maturity of the loan by filing a foreclosure action that asserted that the entire balance was then due. *Id.* ¶¶ 27, 31-33 (citing *Fed. Nat'l Mortg. Ass'n v. Deschaine,* 2017 ME 190, ¶ 26, 170 A.3d 230). As a result, by operation of res judicata, the effect of our *Pushard* decision is that a foreclosure judgment for the borrower based on a mistake in the lender's notice of default renders the note and mortgage unenforceable and requires transfer of title to the borrower, "free and clear of the [lender's] mortgage encumbrance." *Id.* ¶ 36.

[¶3] That is what happened here. The Bank's foreclosure action against Finch culminated in a 2015 judgment in Finch's favor because the Bank's notice

---

[1] Title 14 M.R.S. § 6111 has been amended twice during the life of this case. *See* P.L. 2019, ch. 361, §§ 1, 2 (effective Sept. 19, 2019); P.L. 2015, ch. 36, §§ 1, 2 (effective Oct. 15, 2015). The amendments do not affect our analysis in this appeal, and we cite the current version of the statute unless otherwise noted.

of default failed to comply with 14 M.R.S. § 6111, the same statute at issue in *Pushard*. Relying on our ruling in *Pushard*, Finch sought—and the trial court granted—a judgment declaring that the note and mortgage were unenforceable, that the Bank was required to discharge the mortgage, and that Finch held title to the property free and clear of the mortgage. On appeal, the Bank contends that we should overrule *Pushard*, at least in part, arguing that, as a matter of law, title cannot be transferred and a mortgage is not required to be discharged even if a further foreclosure action on that mortgage would be barred by res judicata.

[¶4] Another foreclosure appeal pending before us, *J.P. Morgan Mortgage Acquisition Corp. v. Camille J. Moulton*, Oxf-21-412 (Me. argued Nov. 1, 2022), also involves a section 6111 notice of default and a judgment for the borrower declaring, as required by *Pushard*, that the borrower holds title to the mortgaged property free and clear of the note and mortgage. The appellant in *Moulton* argues that we should reexamine our precedent requiring a lender's notice of default to comply strictly with the requirements of section 6111. *Cf. JPMorgan Chase Bank, N.A. v. Lowell*, 2017 ME 32, ¶ 21, 156 A.3d 727; *Keybank Nat'l Ass'n v. Sargent*, 2000 ME 153, ¶¶ 36-37, 758 A.2d 528. Given that our foreclosure jurisprudence concerning section 6111 and claim

4

preclusion is at issue in both appeals, we requested supplemental briefing from the parties on a series of broader questions.[2]

[¶5]   With the benefit of that briefing, we decide that our analysis in *Pushard* merits reconsideration and revision.  The effect of *Pushard* is that a typographical error in a section 6111 notice issued before the commencement of a foreclosure action can result in a literal forfeiture of the lender's entire interest in the note and mortgage and a transfer of title to the borrower.  The disproportional and draconian nature of that result, the doubtful legal premise

---

[2]   We requested supplemental briefs from the parties in both this case and *Moulton* on the following questions:

> 1. Should the Court reconsider its existing precedent that a foreclosure judgment in favor of the mortgagor based on the mortgagee's failure to comply with 14 M.R.S. § 6111 renders the note and mortgage unenforceable because a second foreclosure action is barred by principles of res judicata?
>
> > a. If so, upon what grounds, and to what extent, should principles of res judicata continue to apply?  Should it make a difference if the second foreclosure action is based on a new default?
> >
> > b. If the lender is barred from pursuing a second foreclosure action under principles of res judicata, does this inability render the note and mortgage unenforceable such that the lender may pursue alternative claims including, but not limited to, an unjust enrichment claim against the borrower consistent with *Restatement (Third) of Restitution & Unjust Enrichment* § 2(2)?
>
> 2. Should the court reconsider and repudiate the language in *Fed. Nat'l Mortg. Ass'n v. Deschaine*, 2017 ME 190, ¶ 37, 170 A.3d 230, and *Pushard v. Bank of. Am., N.A.*, 2017 ME 230, ¶ 36, 175 A.3d 103, ordering that a failed foreclosure action barring a second foreclosure action on res judicata principles entitles the borrower to a discharge of the mortgage and title to the mortgaged property?

We also invited amicus briefs in *Moulton* on the same questions.

that it rests on—that a lender can accelerate a loan balance by commencing a foreclosure action without having the statutory right to take either step, and the fact that no other jurisdiction has adopted either that result or that premise combine to call our *Pushard* analysis into question.

[¶6]  Based on section 6111's clear language, we conclude that when a lender fails to comply with section 6111's requirements, the lender lacks the right to accelerate the note balance or commence a foreclosure action.  We further conclude that when a lender lacks the right to accelerate the note, the note cannot be, and is not, accelerated anyhow by the commencement of a foreclosure action that the lender also lacks the right to commence.  The result is to overrule our holding in *Pushard* that a lender that has not complied with section 6111 can still commence a foreclosure action and accelerate the balance due.  By overruling *Pushard*, we align our interpretation of the statute with its plain language.

[¶7]  In the Bank's foreclosure action against Finch, the Bank's failure to comply with section 6111 means that the Bank could not accelerate the note balance or enforce the mortgage.  For claim preclusion purposes, the fact that the Bank could not accelerate the note balance or enforce the mortgage means that the Bank's claim for the full amount due on the note and for foreclosure of

6

the mortgage was not and could not have been litigated, and a subsequent foreclosure action would therefore not be barred. That, in turn, means that the Bank's note and mortgage have not been rendered unenforceable. We therefore vacate the judgment requiring the Bank to discharge the mortgage and remand with instructions to enter a judgment in the Bank's favor on Finch's complaint.

## I. BACKGROUND

[¶8] The parties stipulated to the following facts. In 2004, Finch executed a promissory note in the amount of $75,000 and a mortgage on property in Durham securing the debt. The note was properly negotiated to the Bank, and the mortgage was assigned to the Bank and recorded in the Androscoggin County Registry of Deeds. Finch defaulted on his obligations to make monthly payments under the note and mortgage. The Bank commenced an action for foreclosure of the mortgage and for the entire balance due on the note. The District Court (Lewiston, *Dow, J.*) entered a judgment in Finch's favor in April 2015 based on a finding that the Bank had not provided Finch with a notice of default that met the requirements of section 6111. The court did not address or decide any of the other elements of the Bank's claim, such as breach of a condition of the note or mortgage.

[¶9]   In January 2016, after the Bank declined Finch's request to discharge the mortgage following the 2015 judgment, Finch filed, in the Superior Court (Androscoggin County), the complaint in the action now before us.  He sought a judgment declaring that the Bank is obligated to discharge the mortgage and an injunction requiring the Bank to discharge the mortgage.[3]  The Bank asserted a counterclaim for unjust enrichment on the basis that Finch had not repaid principal and interest due under the note.

[¶10]  In December 2018, Finch and the Bank each moved for judgment as a matter of law on the complaint and the counterclaim.  *See* M.R. Civ. P. 50.  In January 2021, the court (*Stanfill, J.*) heard argument on the parties' motions and then entered a partial judgment declaring that Finch was entitled to a discharge of the mortgage under the holding of our decision in *Pushard*.  As to the Bank's counterclaim, the court determined that the Bank could not use the theory of unjust enrichment to recover money it had been owed under either the note or the mortgage, but that it might be entitled to restitution for property taxes and insurance costs that it had paid after losing the foreclosure action in 2015.  The court set the matter for a hearing to determine the extent to which the Bank might be entitled to restitution for expenditures that were made after

---

[3] He also asserted a claim for damages under 33 M.R.S. § 551 (2023), but he later dismissed that claim.

8

the 2015 judgment and that inured to Finch's benefit. In lieu of litigating that issue, however, the parties agreed to an amount that the Bank had paid and stipulated that Finch had reimbursed the Bank.

[¶11] In response to the partial judgment, the Bank in March 2021 recorded a discharge of the mortgage that cited the judgment as the reason for the discharge. The court (*Stewart, J.*) entered a final judgment on October 20, 2021. The final judgment provided that it could be recorded to effectuate a discharge of the mortgage.[4]

[¶12] The Bank timely appealed. *See* 14 M.R.S. § 1851 (2023); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

### A. Justiciability

[¶13] Finch argues that this case is moot because the Bank has already recorded a discharge of the mortgage in the Androscoggin County Registry of Deeds.

[¶14] "Generally, to hear an appeal, we must be able to resolve a justiciable controversy in which the parties have a current interest in the

---

[4] The court stated that "upon payment of the stipulated taxes by Finch" to the Bank, the Bank's counterclaim was "moot and therefore dismissed with prejudice." We do not disturb this aspect of the judgment, although either party may, pursuant to Maine Rule of Civil Procedure 60(b), ask the court to revisit the dismissal in light of our ruling.

outcome of the litigation." *In re Christopher H.*, 2011 ME 13, ¶ 11, 12 A.3d 64. "If a case does not involve a justiciable controversy, it is moot." *Lewiston Daily Sun v. Sch. Admin. Dist. No. 43*, 1999 ME 143, ¶ 13, 738 A.2d 1239. "When mootness is an issue, we examine the record to determine whether there remain sufficient practical effects flowing from the resolution of the litigation to justify the application of limited judicial resources." *Id.* ¶ 14 (alteration and quotation marks omitted).

[¶15]  We have permitted the reinstatement of a discharged mortgage when "such relief [did] not operate to the detriment of intervening rights of third persons who may have relied upon the release." *Calaska Partners L.P. v. McClintick*, 1998 ME 69, ¶ 7, 707 A.2d 1324 (quotation marks omitted); *see also* Restatement (Third) of Prop.: Mortgs. § 6.4 reporter's notes (Am. L. Inst. 1997) ("A discharge executed under fraud or mistake can be reformed or set aside unless it has been relied upon by a good-faith purchaser for value."). Sufficient practical relief thus remains available here because, on this record, no third-party rights have been affected by the Bank's discharge of the mortgage. Further, the so-called "repeat presentation" exception to mootness would apply here, where the court ordered the lender to immediately record a discharge of the mortgage in the registry of deeds. *In re Christopher H.*, 2011 ME 13, ¶ 13,

12 A.3d 64 (explaining that this exception applies where an issue might escape appellate review "because of its fleeting or determinate nature" (quotation marks omitted)).

[¶16] Because the Bank's appeal presents a justiciable controversy notwithstanding the mortgage discharge, we turn to the merits.

**B.    Standards and Scope of Review**

[¶17] The facts relevant to this appeal are undisputed.  The central issues involve questions of law, which we examine de novo.  *See, e.g.*, *Toomey v. Town of Frye Island*, 2008 ME 44, ¶ 8, 943 A.2d 563.

[¶18] The issue originally presented was whether Finch is entitled to a discharge of the mortgage due to the court's conclusion that the 2015 judgment barred a subsequent foreclosure action and rendered the mortgage unenforceable.  On that issue, the Bank argues that even if it lacks the ability to foreclose, Finch is not entitled to a discharge because the Bank still holds title to the property pursuant to Maine's title theory of mortgages.  Given the additional questions we propounded, *see supra* n.2, our review extends also to the other aspect of the holding in *Pushard*: that a judgment against a foreclosing lender based, in whole or in part, on a defective notice of default renders the mortgage unenforceable in the first place.  *See Pushard*, 2017 ME 230, ¶ 36,

175 A.3d 103. Our discussion begins with a summary of our analysis in *Pushard* and then turns to our re-examination of the claim preclusion issue in *Pushard*. We then address stare decisis considerations, and we conclude by applying our conclusions to Finch's claim against the Bank.

**C.    Revisitation and Reconsideration of *Pushard***

**1.    The Underlying Foreclosure in *Pushard***

[¶19]  In *Pushard*, we addressed the effect of a residential foreclosure judgment rendered in favor of the borrowers based on the trial court's findings that the lender had failed to prove that it had sent a valid section 6111 notice before commencing the action, had failed to prove a breach of the mortgage, and had failed to prove the amount due.  *Pushard*, 2017 ME 230, ¶¶ 2, 4, 4 n.2, 18-36, 175 A.3d 103.

[¶20]  The lender, in its foreclosure complaint, had "sought the entire amount due on the note."  *Id.* ¶ 6 (quotation marks omitted).  The promissory note contained a provision allowing the lender to accelerate "[i]f [the borrowers are] in default."  *Id.* ¶ 3 (quotation marks omitted).  Similarly, the mortgage permitted acceleration if the borrowers "fail to keep any promise or agreement made in this Security Instrument."  *Id.*  When the foreclosure case went to trial, the trial court decided that the lender had failed to prove three

elements of its claim—that it had provided the borrowers with a notice of default that complied with section 6111, that the borrowers had breached the terms of the mortgage, and the amount due. *Id.* ¶ 4 & n.2. Neither the lender nor the borrowers appealed from the foreclosure judgment. *Id.* ¶ 4. Later, after the lender failed to discharge the mortgage following the foreclosure judgment in the borrowers' favor, the borrowers brought an action against the lender seeking, inter alia, a judgment declaring that they were entitled to a discharge of the mortgage and an injunction requiring the lender to record a discharge. *Id.* ¶ 5. The trial court granted the lender's motion for summary judgment on the borrowers' claims. *Id.* ¶ 9. The borrowers' appeal resulted in our decision vacating the judgment in the lender's favor on the borrowers' declaratory judgment claim and remanding for entry of judgment in favor of the borrowers. *Id.* ¶¶ 18-36.

### 2. Our *Pushard* Analysis

[¶21] We concluded that the foreclosure judgment rendered the note and mortgage unenforceable under the doctrine of claim preclusion, that the borrowers had no further obligation to pay on the note, and that the borrowers held title to the mortgaged property free and clear of the mortgage

encumbrance. *Id.* ¶¶ 35-36 (citing *Deschaine*, 2017 ME 190, ¶¶ 33, 35, 37, 170 A.3d 230).

[¶22] "Claim preclusion bars relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been[,] litigated in the first action."[5] *Machias Sav. Bank v. Ramsdell*, 1997 ME 20, ¶ 11, 689 A.2d 595 (quotation marks omitted). Our focus in *Pushard* was on the third element. *Pushard*, 2017 ME 230, ¶ 20 & n.9, 175 A.3d 103. In deciding whether the lender's claim for the entire balance due on the note had been or might have been litigated in the foreclosure action, we relied, as we had in *Deschaine*, on our decision in *Johnson v. Samson Constr. Corp.*, 1997 ME 220, 704 A.2d 866. *See Pushard*, 2017 ME 230, ¶¶ 22, 34-35, 175 A.3d 103. *Johnson* involved an initial nonresidential foreclosure action that, unlike the foreclosure action in *Pushard,* had been dismissed with prejudice as a pretrial sanction for failing to comply with a court order, and then

---

[5] "To determine whether the matters presented for decision in the instant action were or might have been litigated in the prior action, we examine whether the same cause of action was before the court in the prior case." *Wilmington Tr. Co. v. Sullivan-Thorne*, 2013 ME 94, ¶ 8, 81 A.3d 371 (alteration and quotation marks omitted). "We define a cause of action through a transactional test, which examines the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong." *Id.* (alteration, citation, and quotation marks omitted).

a second foreclosure action in which the lender sought the same relief as it had in the first action. *Johnson*, 1997 ME 220, ¶¶ 2-4, 704 A.2d 866. The trial court concluded that the lender's second foreclosure action was precluded by the dismissal, with prejudice, of the first. *Id.* ¶ 4. On appeal, we affirmed, explaining that

> [the lender's] first cause of action . . . demanded payment of the entire unpaid principal balance. This suit was an action for the accelerated debt. Once [the lender] triggered the acceleration clause of the note and the entire debt became due, the contract became indivisible. The obligations to pay each installment merged into one obligation to pay the entire balance on the note . . . . The court's dismissal with prejudice of the first action . . . bars the complaint in this action which alleges precisely what the complaint in the first action alleged: that [the borrower] defaulted on the note and that [the lender] is entitled to a judgment for the amount due under the note. [The lender] cannot avoid the consequences of his procedural default in this second lawsuit by attempting to divide a contract which became indivisible when he accelerated the debt in the first lawsuit.

*Id.* ¶ 8 (footnote omitted).

[¶23] In *Pushard*, relying on *Johnson* and *Deschaine*, we said:

> [N]otwithstanding that the foreclosure court determined that the [lender] failed to prove that its notice of default complied with section 6111, we conclude that the [lender] triggered the acceleration clauses of the note and mortgage when it filed the foreclosure action demanding immediate payment of the entire remaining debt.
>
> . . . .

> . . . Pursuant to *Johnson*, because the [lender] failed to prove its claim to the unitary obligation that it placed in issue in the foreclosure action, it no longer has any enforceable interest in the note or in the property set up as security for the note, and the [borrowers] have no further obligation to make payments on the note.

*Pushard*, 2017 ME 230, ¶¶ 33, 35, 175 A.3d 103 (citing *Johnson*, 1997 ME 220, ¶ 8, 704 A.2d 866).

[¶24]  We concluded our analysis by holding as follows:

> Because the [lender] is precluded from seeking to recover on the note or enforce the mortgage, the [borrowers] are entitled, as a matter of law, to the declaratory relief they seek.  We therefore must vacate the judgment in the [lender's] favor on the [borrowers'] claim for declaratory relief and remand the case to the trial court to enter a judgment declaring that the note and mortgage are unenforceable and that the [borrowers] hold title to their property free and clear of the [lender's] mortgage encumbrance.

*Id.* ¶ 36.

[¶25]  It is the premise in our *Pushard* decision that a lender can "trigger" an acceleration clause without having the right to do so that we revisit now. Section 6111 could not be more specific in providing that a lender "may not accelerate . . . or otherwise enforce the mortgage" until it has complied with the statute's notice requirements.  14 M.R.S. § 6111(1).  Acceleration of a note balance either occurs or does not occur.  It cannot occur for some purposes but not occur for others.  It also cannot occur when the lender lacks the right to

accelerate. Yet we decided in *Pushard* that although the lender could not accelerate the note balance for purposes of foreclosure, it could for purposes of res judicata. *See Pushard*, 2017 ME 230, ¶¶ 23-33, 175 A.3d 103. Moreover, that premise was essential to the outcome—it was only because we said that the lender had accelerated the balance by filing the foreclosure action that we could say that the lender's entire claim was, or might have been, litigated for res judicata purposes. *See id.* ¶¶ 21-23, 34-35.

### 3. *Pushard* Reconsidered

#### a. The Effect of Our Reliance on *Johnson* on Our Claim Preclusion Analysis in *Pushard*

[¶26] The first aspect of our decision in *Pushard* that merits discussion is its reliance on our *Johnson* decision. We said in *Pushard* that the case before us was "not distinguishable from *Johnson*," *id.* ¶ 34, but there are two important distinctions, neither of which was mentioned in our *Pushard* decision. In *Johnson*, the lender's first foreclosure action was dismissed with prejudice before trial as a sanction for the lender's failure to comply with a court scheduling order.[6] *Johnson*, 1997 ME 220, ¶ 3, 704 A.2d 866. The trial court never decided whether the lender had a right to accelerate the note balance.

---

[6] The first foreclosure action in *Deschaine* was likewise dismissed with prejudice before trial as a sanction. *Fed. Nat'l Mortg. Ass'n v. Deschaine*, 2017 ME 190, ¶ 7, 170 A.3d 230.

*See id.* ¶¶ 2-4.  The foreclosure action in *Pushard*, in contrast, resulted in a post-trial judgment that included a finding that the lender had not satisfied the preconditions to acceleration, *see Pushard*, 2017 ME 230, ¶ 4, 175 A.3d 103, but our analysis gave zero weight to the actual findings underlying the foreclosure judgment.  Relying on *Johnson,* our claim preclusion analysis instead focused solely on the content of the lender's complaint, as if the action had not gone to trial.[7]  *See id.* ¶¶ 21-33.  The second important difference is that section 6111 did not apply in *Johnson* because the statute applies only "to mortgages upon residential property . . . when the mortgagor is occupying all or a portion of the property as the mortgagor's primary residence and the mortgage secures a loan for personal, family or household use."  14 M.R.S. § 6111(1).  The borrower in *Johnson* was a business.  *Johnson*, 1997 ME 220, ¶ 2, 704 A.2d 866.  Unlike the lender in *Pushard*, therefore, the lender in *Johnson* was not prohibited by

---

[7] We explained our focus on the contents of the foreclosure complaint rather than the contents of the foreclosure judgment by saying that "[w]e cannot hold that the *reason* for a mortgagee's loss on the merits in its foreclosure action is dispositive of whether the judgment precludes a subsequent action on the same debt."  *Pushard v. Bank of Am., N.A.*, 2017 ME 230, ¶ 30, 175 A.3d 103.  But that is simply incorrect; the reason *can* determine whether the judgment precludes a subsequent action on the same debt.  To illustrate, if the reason for the judgment against the lender is that the note and mortgage are void or invalid, no subsequent action could be brought on either.  However, if the reason is only that the lender failed to prove a breach by the borrower, a subsequent action based upon a new and different breach would not be barred because it would involve a new cause of action that was not, and could not have been, litigated in the initial action.  We said as much in rejecting a borrower's res judicata argument in *Sullivan-Thorne*, 2013 ME 94, ¶¶ 12-13, 81 A.3d 371 ("Although IndyMac alleged a breach of the same note and mortgage pursuant to which Wilmington now seeks relief, Wilmington alleges a breach of a different term of the mortgage based on wholly separate conduct.").

section 6111 from accelerating the note balance and enforcing the mortgage. *See* 14 M.R.S. § 6111(1).

[¶27] A second aspect of our *Pushard* analysis worthy of note is our premise, drawn from *Deschaine*, that a lender prohibited from accelerating the note balance because it has not complied with section 6111 can still accelerate the note balance by filing a foreclosure action. *Pushard*, 2017 ME 230, ¶ 32, 175 A.3d 103 (citing *Deschaine*, 2017 ME 190, ¶ 26, 170 A.3d 230). That premise first appeared in our jurisprudence in *Deschaine*, 2017 ME 190, ¶ 26, 170 A.3d 230, which relied on cases from Connecticut, Georgia, Florida, and Hawaii, as well as a secondary source, none of which states that a lender that is statutorily prohibited from accelerating can do so regardless by filing a foreclosure action. Our premise that a lender's filing of a foreclosure action automatically accelerates the note balance cannot be squared, as it must be, with the plain language of section 6111. The statute unequivocally states that a lender may *not* accelerate before complying with section 6111(1-A), but if the lender has complied, that acceleration can occur *before* the foreclosure action is commenced. *See* 14 M.R.S. § 6111(1). Because foreclosure procedure is statutory, we cannot displace the Legislature's definition of when a lender may and may not accelerate with our own definition. *See Bank of Am., N.A. v.*

*Greenleaf*, 2014 ME 89, ¶ 8, 96 A.3d 700 ("In Maine, foreclosure is a creature of statute . . . .").

> **b.** **The Appropriate Claim Preclusion Analysis When the Lender in a Foreclosure Proceeding Fails to Comply with 14 M.R.S. § 6111**

[¶28] Section 6111 explicitly limits a lender's ability both to accelerate the note balance and to enforce the mortgage through foreclosure. 14 M.R.S. § 6111(1). The enforcement limitation applies to the commencement of a foreclosure action, whereas the acceleration limitation governs the exercise of a lender's contractual right.

> **(1)** **Enforcement of the Mortgage**

[¶29] Regarding the enforcement limitation, a settled principle of claim preclusion that we did not acknowledge in *Deschaine* or *Pushard* holds that a judgment based on the plaintiff's failure to comply with a precondition to the commencement of the action is not given preclusive effect because a plaintiff's claim cannot be litigated if the plaintiff is not entitled to bring the suit. *See* Restatement (Second) of Judgments § 20(2) (Am. L. Inst. 1982); *Dutil v. Burns*, 1997 ME 1, ¶ 5 & n.3, 687 A.2d 639. As stated in the Restatement,

> A valid and final personal judgment for the defendant, which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition

20

has been satisfied, unless a second action is precluded by operation of the substantive law.

Restatement (Second) of Judgments § 20(2);[8] *see, e.g.*, *Bos. Edison Co. v. United States*, 106 Fed. Cl. 330, 342-43 (Fed. Cl. 2012) (citing section 20(2) of the Restatement); *In re Sonus Networks, Inc, S'holder Derivative Litig.*, 499 F.3d 47, 61-62 (1st Cir. 2007) (citing section 20(2) of the Restatement and concluding that failure to comply with a precondition to suit did not preclude further suit on the same claim); *Segal v. Am. Tel. & Tel. Co.*, 606 F.2d 842, 845-46 (9th Cir. 1979) (concluding that failure to fulfill a precondition to suit did not bar another action after the precondition was satisfied).

[¶30] A comment to section 20(2) explains further: "A determination by the court that the [party] has no enforceable claim because the action is premature, or because he has failed to satisfy a precondition to suit, is not a determination that he may not have an enforceable claim thereafter, and does not normally preclude him from maintaining an action when the claim has

---

[8] A comment explains the import of the phrase "unless a second action is precluded by operation of the substantive law": "As a matter of substantive law, however, the failure of the plaintiff to establish the existence of the condition precedent in the original action may fix the relationship of the parties so that it is no longer open to him to satisfy that condition." Restatement (Second) of Judgments § 20 cmt. m (Am. L. Inst. 1982). An example of when the substantive law may bar a subsequent action is when a subsequent action is precluded by the applicable statute of limitations. In *Hebron Academy, Inc. v. Town of Hebron*, we observed, "Although a decision on the merits for res judicata purposes generally does not include a dismissal for procedural defects, the question whether an action is barred by a statute of limitations is a matter of substance." 2013 ME 15, ¶ 29, 60 A.3d 774 (alteration, citations, and quotation marks omitted).

become enforceable." Restatement (Second) of Judgments § 20 cmt. k. Moreover, the rule applies regardless of *when* the court determines that the action is premature or the plaintiff has failed to satisfy a precondition to suit— at the pleadings stage, during discovery, or even at trial. *Id.*; *S. Willow Props., LLC v. Burlington Coat Factory of N.H., LLC*, 986 A.2d 506, 511 (N.H. 2009).

[¶31] Based on section 20(2) of the Restatement and similar authority, courts around the country have concluded that a prior judgment against a foreclosing lender based on the lender's failure to comply with a notice precondition to bringing suit does not preclude a subsequent foreclosure action. *See, e.g.*, *State St. Bank & Tr. Co. v. Badra*, 765 So. 2d 251, 254-55 (Fla. Dist. Ct. App. 2000); *PNC Bank, Nat'l Ass'n v. Richards*, No. 11AP-275, 2012 WL 1245719, at *3-6 (Ohio Ct. App. Apr. 10, 2012); *Cap. Invs., Inc. v. Lofgren*, 724 P.2d 862, 864-65 (Or. Ct. App. 1986). The court in *Richards*, for example, cited section 20(2) of the Restatement in labeling the lender's prior foreclosure action "premature" because it was filed before the bank had complied with the precondition for commencing suit. *Richards*, 2012 WL 1245719, at *3-6.

[¶32] Section 6111's requirement that a lender issue a valid notice of default and right to cure before it may enforce the mortgage is undeniably a

22

precondition to the commencement of a foreclosure action.[9]  *See* 14 M.R.S. § 6111(1) ("[A] mortgagee may not accelerate maturity of the unpaid balance of the obligation or *otherwise enforce the mortgage* . . . until at least 35 days after . . . [issuing] written notice [of default] to the [borrower]." (emphasis added)).  Contrary to our ruling in *Pushard*, under both the Restatement and the clear preponderance of cases from other jurisdictions, a judgment in favor of the borrower based on the lender's failure to comply with section 6111 would not preclude a subsequent foreclosure action predicated on a new and valid notice of default.[10]

---

[9]  The dissent implies that we mischaracterize compliance with section 6111 by calling it a precondition to enforcing a mortgage by foreclosure.  Dissenting Opinion ¶¶ 65-71.  But the statute plainly frames it as exactly that.  14 M.R.S. § 6111(1) (providing that a lender "may not . . . enforce the mortgage . . . until" it has complied).  The dissent goes on to point out that our precedent treats "a proper notice of default not merely as a ticket for admission into the courtroom but as an actual substantive element of the mortgagee's case for foreclosure."  Dissenting Opinion ¶ 65.  In fact, a valid section 6111 notice is both a precondition to suit and an element of a foreclosure claim, there being no inconsistency between the two.  In that sense, it is akin to proof of ownership of the mortgage note, which is also both a precondition to maintaining a foreclosure action and an element of a foreclosure claim.  A lender that cannot prove ownership of the note lacks standing, and a foreclosure action commenced by a lender that lacks standing is dismissed without prejudice.  *See Bank of Am., N.A. v. Greenleaf*, 2015 ME 127, ¶¶ 2, 4, 9, 124 A.3d 1122.

[10]  The dissent repeatedly emphasizes that the foreclosure judgment in *Pushard* must have had claim-preclusive effect because it was a "judgment on the merits."  Dissenting Opinion ¶¶ 65-66, 68, 71, 68 n.26, 71 n.27.  But a "judgment on the merits" is "one in which the merits of [a party's] claim are in fact adjudicated [for or] against the [party] after trial of the *substantive issues*."  Restatement (Second) of Judgments § 19 cmt. a (emphasis added).  A judgment that is based solely on a plaintiff's failure to meet a precondition to suit is not a "judgment on the merits."  *See Costello v. United States*, 365 U.S. 265, 285-86 (1961) (explaining that dismissal of an action "based on a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of [the] substantive claim" is not an "adjudication on the merits").  We have recognized that principle outside the foreclosure context.  *See Dutil v. Burns*, 1997 ME 1, ¶ 5, 687 A.2d 639 ("[A] dismissal for failure to comply with [a] statutory procedure is akin to a dismissal for insufficient service of process or lack

### (2) Acceleration of the Note

[¶33]   With respect to the right to accelerate, we have previously endorsed the fundamental principle of law that a lender may accelerate the balance due on a note only if the lender has the right to do so. *Briggs v. Briggs*, 1998 ME 120, ¶¶ 6, 8-11, 711 A.2d 1286.  In *Briggs,* after the obligors on two promissory notes had missed multiple installment payments, the note holders sued the obligors for the entire amounts due under the notes. *Id.* ¶¶ 2-3, 4 n.2. The trial court granted summary judgment to the holders, *id.* ¶¶ 2, 4, concluding that "the plaintiffs were, upon breach, entitled to accelerate the remaining payments due," *id.* ¶ 7.  We concluded otherwise on appeal. *See id.* ¶¶ 7-11. Because neither note contained an acceleration clause, we held that the note holders were "entitled to recover an amount representing each missed payment.  They did not, however, have the right to accelerate the total

---

of subject matter jurisdiction, and does not serve as an adjudication of the merits."); *Hebron Acad., Inc.*, 2013 ME 15, ¶ 29, 60 A.3d 774 ("[A] decision on the merits for res judicata purposes generally does not include a dismissal for procedural defects . . . .").

Moreover, the premise that a judgment on the merits necessarily has claim-preclusive effect is questionable.  As the United States Supreme Court has observed, the "premise that all judgments denominated 'on the merits' are entitled to claim-preclusive effect . . . is not necessarily valid." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501 (2001).  "[O]ver the years[,] the meaning of the term 'judgment on the merits' has gradually undergone change, and it has come to be applied to some judgments . . . that do not pass upon the substantive merits of a claim and hence do *not* (in many jurisdictions) entail claim-preclusive effect.  That is why the Restatement of Judgments has abandoned the use of the term—'because of its possibly misleading connotations.'" *Id.* at 502-03 (citations and quotation marks omitted) (quoting Restatement (Second) of Judgments § 19 cmt. a).

24

obligation in full." *Id.* ¶¶ 9-11.  Accordingly, we vacated the judgment in *Briggs* and remanded for "further proceedings consistent with [our] opinion."[11]  *Id.* ¶ 11.

[¶34]  As in *Briggs,* it was actually adjudicated in the *Pushard* foreclosure that the lender failed to prove that it had the right to accelerate the note balance.  *See Pushard*, 2017 ME 230, ¶ 4 & n.2, 175 A.3d 103.  Yet we held in *Pushard* that acceleration had nonetheless occurred based on the premise we introduced in *Deschaine*—that the mere filing of the foreclosure complaint was a "valid exercise" of the lender's right to accelerate.  *Id.* ¶ 32 (quoting *Deschaine*, 2017 ME 190, ¶ 26, 170 A.3d 230).  The premise that the filing of a complaint can be a "valid exercise" of a right when the court in the same case has decided after trial that there was no such right has no counterpart in our jurisprudence beyond *Pushard*.  A "valid exercise" of a right cannot possibly occur without a valid right to be exercised, and, contrary to our reasoning in *Deschaine* and *Pushard*, the filing of a foreclosure action does not accelerate the mortgage note if the lender has no right to accelerate.

---

[11] Notably, in *Briggs*, we did not follow our *Johnson* decision of the previous year.  In other words, we only vacated the judgment in favor of the note holders; we did not remand for entry of judgment against them even though the holders had attempted to accelerate and asserted a claim for the entire amount due in their complaint.  *See Briggs v. Briggs*, 1998 ME 120, ¶¶ 3, 8-11, 711 A.2d 1286.  The difference between *Johnson* and *Briggs* is that the lender's right to accelerate was never actually adjudicated in *Johnson*.

[¶35] The acceleration of a promissory note is a contractual remedy akin to termination, novation, rescission, and other contractual remedies that, if they are exercised validly, alter the status of the contract. *See New Bank of New England, N.A. v. Toronto-Dominion Bank*, 768 F. Supp. 1017, 1023 (S.D.N.Y. 1991) ("Acceleration is a remedy that can only be provided by—and exercised in accordance with—contract."). A party's mere allegation in its complaint that it has exercised its contractual right to a remedy—whether to terminate, rescind, renew or accelerate—does not mean that the purported exercise of the right was valid. If the party fails to prove that it is entitled to exercise the contractual right it has invoked, the purported exercise fails—regardless of the allegations in the party's complaint—and the status of the contract is unchanged. *See Fed. Nat'l Mortg. Ass'n v. Thompson*, 912 N.W.2d 364, 370-72 (Wis. 2018) (holding that a loan was not accelerated when the foreclosing lender failed to prove a default by the borrower); *Baldazo v. Villa Oldsmobile, Inc.*, 695 S.W.2d 815, 817 (Tex. App. 1985) ("Because [the lender] did not, as a matter of law, accelerate the balance due under the note, it failed, as a matter of law, to prove the cause of action to collect the accelerated balance.").

[¶36] The 2018 decision of the Wisconsin Supreme Court in *Thompson* explains the point:

Generally, and in the instant case, there cannot be a valid acceleration of the debt without a default by the borrower. That is, the borrower's default is a condition precedent to the lender's right to accelerate the debt.

. . . .

. . . Thus, because it was never proved in the 2010 lawsuit that [the borrower] was in default, the entire balance of the note was never validly accelerated. In such circumstances, the parties are placed back into the position they held before the commencement of the lawsuit. [The borrower] was obligated to continue making installment payments after the dismissal of the 2010 lawsuit, and claim preclusion does not prevent [the lender] from suing [the borrower] for failing to make those payments.

Accordingly, we conclude that the instant lawsuit alleging a default as of September 2012 is not barred by the doctrine of claim preclusion.

*Thompson*, 912 N.W.2d at 371-72.

[¶37] In *Pushard*, the foreclosure court decided that the lender had failed to prove that it had provided the borrowers with a notice of default that complied with section 6111 and had failed to prove that the borrowers had breached the terms of the mortgage. *Pushard*, 2017 ME 230, ¶ 4, 175 A.3d 103. The foreclosure judgment therefore should have meant that no acceleration of the balance had occurred and the note and mortgage were still in force.[12] A

---

[12] Section 6111 imposes preconditions on a lender's ability to "accelerate maturity of the unpaid balance of the obligation or otherwise enforce the mortgage"; it does not apply to a lender's claim for only the unaccelerated amount past due under the note. 14 M.R.S. § 6111(1). Therefore, a lender may be able to recover the past due amount without complying with section 6111 (and without

subsequent foreclosure action based on a different notice of default and a different allegation of default would assert a different claim and would not be barred.[13]  *See, e.g.*, *Fairbank's Cap. Corp. v. Milligan,* 234 F. App'x 21, 24 (3d Cir. 2007); *Cenlar FSB v. Malenfant*, 151 A.3d 778, 791-93 (Vt. 2016); *Singleton v. Greymar Assocs.*, 882 So. 2d 1004, 1007-08 (Fla. 2004); *Afolabi v. Atl. Mortg. & Inv. Corp.*, 849 N.E.2d 1170, 1174-75 (Ind. Ct. App. 2006).[14]

[¶38]  Our holding in *Pushard* that the mere filing of a complaint can result in the "valid exercise" of a nonexistent right has disquieting implications outside the foreclosure context.  A party to a contract may issue a notice of termination that does not comply with the requirements of the contract or that violates a statute.  If the party then files an action claiming to have terminated

---

accelerating the debt).  Accordingly, for claim preclusion purposes, a claim for the unaccelerated amount past due under the note *could have been litigated* in conjunction with a foreclosure action even where the foreclosure claim itself *could not have been litigated* because of a section 6111 violation.  In *Pushard*, for example, notwithstanding the lender's inability to accelerate or litigate the foreclosure claim that it attempted to assert, the lender could have litigated a claim for the unaccelerated amount past due on the note.  Because the claim for the past-due amount could have been litigated, claim preclusion would bar recovery for that amount in any subsequent action. *See Sullivan-Thorne*, 2013 ME 94, ¶¶ 7-8, 81 A.3d 371.

[13]  Likewise, issue preclusion did not bar a future acceleration of the balance due because the foreclosure court made no finding essential to the judgment that the loan had been accelerated, leaving the parties free to relitigate that issue in a subsequent action.  *See Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131 (explaining that issue preclusion "prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment" (quotation marks omitted)).

[14] We cited favorably to the holdings in *Singleton* and *Afolabi* not long before we decided *Pushard*. *See Sullivan-Thorne*, 2013 ME 94, ¶ 12, 81 A.3d 371.

the contract, does the filing of the suit operate as a "valid exercise" of the party's right to terminate the contract even though the notice was defective? Our *Pushard* ruling suggests that it would. In an action for forcible entry and detainer, a landlord may issue a notice to quit purportedly terminating a tenancy at will and follow it up with a complaint for forcible entry and detainer alleging that the tenancy has been terminated. Does the landlord's filing of the complaint constitute a "valid exercise" of the landlord's right to terminate the tenancy, such that, if the court decides that the notice to quit was defective and renders judgment for the tenant, the landlord is barred by claim preclusion from ever again seeking to terminate the tenancy? By analogy, our *Pushard* analysis seems to point that way, but such is not the law. *See S. Willow Props., LLC*, 986 A.2d at 511 (holding, in an eviction action, that a judgment against a landlord based on a defective notice to quit did not have preclusive effect).

[¶39] Contrary to our decision in *Pushard*, we conclude that when a lender fails to prove in a foreclosure action that it has issued a valid notice of acceleration or fails to prove that the borrower has breached the parties' contract, the parties are returned to the positions they occupied before the filing of the action (except as to any claim for an unaccelerated amount due that could have been litigated). *See Thompson*, 912 N.W.2d at 371-72; *Singleton*,

882 So. 2d at 1007-08; *see also supra* n.12.

### D.    Stare Decisis Considerations

[¶40]  Although we thus conclude that there is a substantial justification for revising our *Pushard* analysis, we must weigh that against the countervailing considerations of stare decisis.  The doctrine of stare decisis is a court-made policy.  *See Payne v. Tennessee*, 501 U.S. 808, 828 (1991); *Myrick v. James*, 444 A.2d 987, 997-98 (Me. 1982), *superseded by statute on other grounds as recognized by Erlich v. Ouellette, Labonte, Roberge & Allen, P.A.*, 637 F.3d 32, 37 & n.7 (1st Cir. 2011).  Its purposes are to create "stability" in the law and to "enable[ ] the public to place reasonable reliance on judicial decisions affecting important matters."  *McGarvey v. Whittredge*, 2011 ME 97, ¶ 63, 28 A.3d 620 (Levy, J., concurring).  On the other hand, stare decisis does not carry the same force and weight in every context, and there are well-established factors that help guide the ultimate determination of whether to revise precedent.  *See, e.g.*, *Myrick*, 444 A.2d at 1000.

### 1.    Consistency

[¶41]  As we have explained, our premise in *Deschaine* and *Pushard*—that the filing of a foreclosure complaint automatically accelerates the balance due on the note regardless of whether the lender has the statutory and contractual right to accelerate—is contrary to both the express language of section 6111 and our longstanding rule that whether claim preclusion applies does not turn solely on the contents of the complaint in the initial action if the court has actually adjudicated the claim.  *See supra* ¶¶ 26-39.  As the Supreme Court has noted,

> *stare decisis* is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience.  Remaining true to an intrinsically sounder doctrine established in prior cases better serves the values of *stare decisis* than would following a more recently decided case inconsistent with the decisions that came before it; the latter course would simply compound the recent error and would likely make the unjustified break from previously established doctrine complete.  In such a situation, special justification exists to depart from the recently decided case.

*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 231 (1995) (citation and quotation marks omitted).

[¶42]  The view that a residential mortgage lender can accelerate a note balance without complying with section 6111 and that a defective notice of

default can automatically result in a transfer of title to the borrower was unprecedented in our jurisprudence until 2017, when we decided *Deschaine* and *Pushard*. Given that one of the basic purposes of stare decisis is stability in the law, *see McGarvey*, 2011 ME 97, ¶ 63, 28 A.3d 620 (Levy, J., concurring), the doctrine does not oppose revision of precedent that is itself a recent aberration from longstanding legal principles, *see Adarand Constructors, Inc.*, 515 U.S. at 232-34.

## 2. Anomaly

[¶43] A factor that contributes to reconsideration of precedent includes "a tide of critical or contrary authority from other jurisdictions." *Samara v. Matar*, 419 P.3d 924, 933 (Cal. 2018) (alteration and quotation marks omitted); *cf. MacDonald v. MacDonald*, 412 A.2d 71, 72-73, 73 n.3 (Me. 1980) (abrogating a common law rule and noting the growing support from other jurisdictions and commentators for the new rule); *Black v. Solmitz*, 409 A.2d 634, 639 (Me. 1979) (similarly looking to the growing weight of authority when abrogating a rule of common law).

32

[¶44]   No other jurisdiction follows the rule adopted in *Pushard* that claim preclusion bars a second foreclosure attempt after a first mortgage foreclosure attempt has failed due to a defective notice of default.[15]

### 3.   Workability

[¶45]   A "relevant consideration in the *stare decisis* calculus is the workability of the precedent in question." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. ___, 138 S. Ct. 2448, 2481 (2018).  The result of our ruling in *Pushard* is that either the lender is automatically compelled to transfer title to the borrower for zero consideration or, to the extent that the Bank's title argument in this case is valid, *see infra* n.19, title to the mortgaged property is put into limbo, with neither the borrower nor the lender able to market the property.  Neither outcome is a logical result of a defective notice of default, signaling the need to revise the analysis.

---

[15]   Indeed, no other jurisdiction has adopted the view that a failed first foreclosure attempt necessarily bars a second attempt based on a new breach.  Supporters of such a rule often cite Ohio as adopting it, but there, a lender is precluded from trying to foreclose again after *two* voluntary dismissals, and there are exceptions to this rule, such as when the mortgage has been reinstated following an earlier default.  *See U.S. Bank Nat'l Ass'n v. Gullotta*, 899 N.E.2d 987, 991-93 (Ohio 2008).  For a recent decision discussing a defective notice and rejecting the reasoning in *Pushard*, *see U.S. Bank Nat'l Ass'n v. Davis*, 232 A.3d 952, 954-59 (Pa. Super. Ct. 2020) (citing authority from Florida and the United States Court of Appeals for the Third Circuit); *see also Fed. Nat'l Mortg. Ass'n v. Thompson*, 912 N.W.2d 364, 370-71 (Wis. 2018) (rejecting Maine precedent as not "persuasive").  While not directly relevant, given that our analysis does not directly implicate *Johnson*, it should be noted that *Johnson* relied on a decision that was subsequently disavowed by the Florida Supreme Court.  *See Johnson v. Samson Constr. Corp.*, 1997 ME 220, ¶ 8, 704 A.2d 866 (citing *Stadler v. Cherry Hill Devs., Inc.*, 150 So. 2d 468 (Fla. Dist. Ct. App. 1963)); *Singleton v. Greymar Assocs.*, 882 So. 2d 1004, 1008 (Fla. 2004) (expressly abrogating *Stadler*).

### 4.      Reliance

[¶46]  Given that a fundamental concern of the stare decisis doctrine is the ability to rely on the law as enunciated by the court, another important factor in determining whether to apply the doctrine is whether revising the precedent will upset settled expectations.  *See Adams v. Buffalo Forge Co.*, 443 A.2d 932, 935 (Me. 1982); *Jordan v. McKenzie*, 113 Me. 57, 59, 92 A. 995, 996 (1915).  Here, not only is the decision in *Pushard* of recent vintage, but its ruling cannot have caused reasonable reliance by borrowers or lenders.[16] Under what has been referred to as the "court-as-casino" dynamic created by *Pushard*, a single typographical error in a required notice of default can have the same windfall result as a winning casino bet, but in the form of a house instead of cash.  A borrower in a foreclosure action may hope the lender has made a mistake that will result in the windfall, but a hope is not reliance.  In any mortgage loan transaction, the parties have, or should have, expectations regarding their rights and obligations.  Overruling *Pushard* would actually restore and fulfill those expectations.

---

[16]  As we have noted, good-faith reliance by third parties is protected.  *See supra* ¶ 15.

34

### 5.    Policy

[¶47]  Another relevant factor is whether the precedent promotes sound public policy and addresses social needs.  *See Myrick*, 444 A.2d at 998.  Drastic foreclosure sanctions are sometimes defended, including in the dissent, *see* Dissenting Opinion ¶ 72, on the ground that foreclosing lenders and their servicers will otherwise bring repeated failed foreclosure actions.  *See, e.g.*, Megan Wachspress et al., Comment, *In Defense of "Free Houses*," 125 Yale L.J. 1115, 1115-16 (2016).  However, the Legislature in 2019 enacted a statute imposing a duty on lenders and servicers to act in good faith and authorizing courts to impose sanctions for breach of the duty, including damages and dismissal of a foreclosure action.  P.L. 2019, ch. 363, § 1 (effective Sept. 19, 2019) (codified as subsequently amended at 14 M.R.S. § 6113 (2023)). We should not assume the courts will not use their authority to deal with abusive foreclosure practices.  Besides, under *Pushard*, just one defective notice in one foreclosure action can result in a "free house," as this case illustrates. How many failed foreclosure actions is too many?  The answer has to be more than one.  A "free house" forfeiture, if it is ever decreed, should be reserved for conduct worse than issuing a single defective notice.

## III.  CONCLUSION

[¶48]  The ultimate question before us is whether the considerations favoring a revision of our *Pushard* analysis outweigh the considerations of stare decisis.

[¶49]  Overruling *Pushard* would align our application of section 6111 with the plain language of the statute.  It would clarify that a foreclosing lender cannot accelerate a note balance or commence a foreclosure action without having the statutory and contractual right to do so.  It would align our jurisprudence with the substantial weight of authority that a failure to meet a precondition to the commencement of a suit does not have claim-preclusive effect.  It would treat consistently lenders who fail to comply with statutory preconditions to suit—proof of ownership of the note and proof of compliance with section 6111.  It would avoid the draconian windfall outcome under which a typographical error in a foreclosing lender's first and only section 6111 notice voids the note and mortgage and transfers title to the borrower.  It would end Maine's outlier status as the only jurisdiction that endorses that outcome.  Instead of automatically imposing a total forfeiture in response to a single failure to comply with section 6111, it would allow the court to tailor the consequence, potentially including sanctions, to the circumstances of the case.

36

[¶50]   Finally, the touchstone of the res judicata doctrine is fairness. *See Tungate v. Gardner,* 2002 ME 85, ¶ 4, 797 A.2d 738 (articulating that res judicata "is justified by concerns for . . . fairness to litigants" (quotation marks omitted)).   We have indicated, multiple times, that strict compliance is required with the statutory notice requirements, and nothing in our analysis today changes that.  *See, e.g.*, *Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700.  On the other hand, it does not promote fairness for a lender's mistake in a notice of default to result in the borrower not just avoiding foreclosure but avoiding any obligation on the note and mortgage and acquiring title to the mortgaged property.[17]

[¶51]   Having weighed all of these considerations against those of stare decisis, we now overrule *Pushard* to the extent that it holds that the acceleration

---

[17]   Contrary to the dissent's assertion, our decision does not "fundamentally alter[] the law" to "create[] a special, privileged class of litigant" and "a windfall for mortgagees," Dissenting Opinion ¶ 83 (emphasis omitted).  Can  it be said that a lender that has lost its first and only foreclosure action is "privileged" because it has not also lost all of its rights under the note and mortgage?  Or that the lender is getting a "windfall" because the borrower who has won in the foreclosure action does not also win a "free house"?  In fact, it was *Deschaine* and *Pushard* that put lenders who are subject to section 6111 into a special class of litigant.  Is there any other situation in which a party who is required to send a notice before initiating litigation not only loses the case if the notice contains an error but also automatically forfeits property that it already owns?

It was *Pushard*, building on *Deschaine*, that helped make Maine foreclosure law unique by introducing the idea that an incorrect notice of default can void the note and mortgage and transfer title automatically to the borrower, free and clear and free of charge. *See Pushard*, 2017 ME 230, ¶ 32, 175 A.3d 103.  Neither *Deschaine* nor *Pushard* acknowledged stare decisis as they altered the law, so our decision today is a course correction that actually promotes stare decisis.  It steers our jurisprudence back toward our own precedent, our Legislature's statutes, and the legal mainstream.

of a note balance can occur without the lender having proved that it has complied with the statutory and contractual requirements to accelerate. When a court finds that a lender's notice of default, acceleration, and right to cure fails to comply with section 6111, the court should treat the lender's foreclosure claim as prematurely commenced, without proceeding further unless the lender has asserted a justiciable claim under the note for the unaccelerated balance due.[18] The court should ordinarily also consider awarding attorney fees to the borrower pursuant to the applicable statute. *See* 14 M.R.S. § 6101 (2023). In appropriate cases, the court should also consider imposing sanctions and other relief available under the foreclosure statutes or its inherent authority, including dismissal with prejudice if it is appropriate. *See* 14 M.R.S. § 6113(3) (authorizing the imposition of sanctions during a foreclosure action for a lender's or mortgage servicer's violation of its duty of good faith).

[¶52] In the Bank's foreclosure action against Finch, the issue of whether

---

[18] The issue of the lender's compliance with section 6111 may arise in different contexts, such as on a motion to dismiss, a motion for summary judgment, or even at trial. The result is the same regardless of the context in which the issue arises—if the court determines that the lender has not complied with section 6111's notice requirements, the note balance cannot be accelerated, the foreclosure claim cannot be litigated, and the resulting judgment does not preclude a subsequent foreclosure action. If no claim for the unaccelerated amount due has been asserted, the effect of the judgment, under the rule against claim-splitting and the claim preclusion doctrine, is to bar any future claim for that amount because the claim could have been litigated regardless of the lender's failure to comply with section 6111. *See supra* n.12.

38

the Bank was entitled to foreclose was decided against the Bank based only on its defective section 6111 notice. As we have explained above, the foreclosure judgment in favor of Finch does not bar a further foreclosure action or render the note and mortgage unenforceable, although it precludes the Bank from recovering in the future any unaccelerated balance due on the note as of the date of the judgment.[19] Finch accordingly is not entitled to the relief he seeks, and the Bank is entitled to a judgment as a matter of law on Finch's complaint.

The entry is:

> The judgment in favor of Charles D. Finch on his claims for declaratory and injunctive relief is vacated, and the matter is remanded for entry of a judgment in favor of U.S. Bank, N.A., on those claims. The judgment dismissing the unjust enrichment counterclaim of U.S. Bank, N.A., as moot is affirmed.

---

HJELM, A.R.J., with whom MEAD, J., and HUMPHREY, A.R.J., join, dissenting.

[¶53] Not even seven years ago, in two separate but analytically related

---

[19] Because the Bank's note and mortgage remain enforceable, we need not and do not reach the issue originally raised in the Bank's appeal: the validity of the principle, introduced in *Deschaine* and repeated in *Pushard*, that because the lenders could not foreclose, the borrowers automatically held title to the mortgaged properties free and clear of the lenders' mortgage encumbrances. *See Deschaine*, 2017 ME 190, ¶ 37, 170 A.3d 230; *Pushard*, 2017 ME 230, ¶ 36, 175 A.3d 103.

cases each decided unanimously, the Court held that a judgment entered against a mortgagee in a foreclosure action barred successive lawsuits seeking the same relief. *See Pushard v. Bank of Am., N.A.*, 2017 ME 230, ¶¶ 4, 35-36, 175 A.3d 103 (where the judgment in the first proceeding was based, in part, on a deficient notice of default); *Fed. Nat'l Mortg. Ass'n v. Deschaine*, 2017 ME 190, ¶¶ 7, 37, 170 A.3d 230 (where the prior judgment was issued as a sanction for the plaintiff's failure to comply with a pretrial procedural order). This conclusion is unremarkable because it treats mortgagees like any other claimant that had already sought relief but was unsuccessful—when a party loses its case through a final judgment arising from a failure of proof or some other reason that is dispositive, that party is barred from trying again. *See U.S. Bank, N.A. v. Tannenbaum*, 2015 ME 141, ¶¶ 6, 10, 126 A.3d 734. Today, the Court retreats from that principle. It does not do so because the law emanating from those cases has become antiquated. It does not do so because the law has changed. Rather, the Court does so simply because it now disagrees with the outcome of the cases we decided a short time ago.

[¶54] In my view, *Pushard* and *Deschaine* remain good and settled law. And the effects of the Court's holding today go well beyond overruling most or all of those two 2017 cases; it calls into question other consequential areas of

established foreclosure law. Even beyond that, the Court's willingness to make an abrupt change in the direction of the law in these circumstances reasonably raises questions about the extent to which this Court is willing to adhere to established precedent generally.

[¶55] For these reasons, I respectfully dissent.

## A.

[¶56] The facts of this case are undisputed and straightforward.

[¶57] In 2004, Charles D. Finch executed a promissory note, with performance to be secured by a mortgage. The instruments were ultimately acquired by U.S. Bank, N.A. Five years after executing the note and mortgage, Finch defaulted by failing to make payments as required. The following year, in 2010, U.S. Bank filed a court action for foreclosure, which, after a trial, resulted in a judgment entered in favor of Finch based on the court's finding that the notice of default and right to cure issued by U.S. Bank did not specify the amount that Finch needed to pay to cure the default and therefore did not satisfy the requirements of 14 M.R.S. § 6111 (2023).

[¶58] After the court issued its judgment, U.S. Bank declined Finch's request that it discharge the mortgage, prompting Finch to file this action seeking a declaratory judgment that he was entitled to the discharge. The

parties filed cross-motions for judgment as a matter of law, *see* M.R. Civ. P. 50, supported by a stipulated set of facts. The court granted Finch's motion in part, concluding that the judgment entered against U.S. Bank in the 2010 foreclosure case barred it from seeking further relief from Finch under the note and mortgage, that the note was therefore unenforceable because there was nothing left to be secured by the mortgage, and that Finch was entitled to have U.S. Bank record a discharge of the mortgage.[20] Pursuant to the order, U.S. Bank has now recorded the discharge.

[¶59]   In reaching its determinations, the court explicitly relied on *Pushard* and *Deschaine*. And, undeniably, the court was correct in the way it

---

[20]   The judgment on these issues was partial because the court concluded that it could not adjudicate as a matter of law U.S. Bank's counterclaim against Finch for unjust enrichment, which was based on allegations that, after the judgment was entered in the 2010 foreclosure case, the Bank took action benefiting Finch by paying certain expenses associated with the property. The parties ultimately reached an agreement under which Finch reimbursed U.S. Bank for those expenses. Also by agreement of the parties, the court then entered a final judgment, which recited that U.S. Bank's counterclaim had become "moot and therefore [was] dismissed with prejudice."

Even though the agreed judgment also recited that the parties had "properly preserved all appellate rights" associated with the earlier partial judgment, in my view the dismissal *with prejudice* of U.S. Bank's counterclaim for unjust enrichment, issued pursuant to the parties' consent, is dispositive of that claim. The Court now leaves open the prospect of that claim being resurrected on remand because it is reopening other aspects of the judgment. Court's Opinion ¶ 11 n.4. Given that U.S. Bank itself participated in posturing its counterclaim as having been finally resolved, there should not be an opportunity for that claim to be addressed any further. If the dismissal with prejudice was to be conditional and not carry the finality that the phrase "with prejudice" signifies, *see* M.R. Civ. P. 41(a)(2); *Johnson v. Samson Constr. Corp.*, 1997 ME 220, ¶ 8, 704 A.2d 866, U.S. Bank could and should have agreed to the judgment only if that reservation had been made explicit.

applied that precedent.[21]   Consistent with our holdings in *Pushard* and *Deschaine*, U.S. Bank's commencement of the underlying foreclosure action against Finch, standing alone and without regard to any other action U.S. Bank had taken, had the effect of accelerating his total payment obligation pursuant to the promissory note.  *Pushard*, 2017 ME 230, ¶¶ 30-33, 175 A.3d 103; *Deschaine*, 2017 ME 190, ¶ 26, 170 A.3d 230.  The judgment adverse to U.S. Bank in its foreclosure action thereby relieved Finch of that fully accelerated obligation in its entirety.  *See Pushard*, 2017 ME 230, ¶ 35, 175 A.3d 103; *Deschaine*, 2017 ME 190, ¶ 35, 170 A.3d 230.  And, pursuant to our holdings in *Pushard* and *Deschaine*, because there was no performance remaining to be secured, Finch was entitled to a declaration that both the note and mortgage were unenforceable and that he owned the property free and clear of the mortgage encumbrance.  *See Pushard*, 2017 ME 230, ¶ 36, 175 A.3d 103; *Deschaine*, 2017 ME 190, ¶ 37, 170 A.3d 230.

[¶60]   In its brief on appeal and at oral argument, U.S. Bank sought a remedy more modest than what the Court today allows because U.S. Bank

---

[21]  A peripheral step in the trial court's analysis was incorrect.  Contrary to an assertion in the partial judgment, a mortgage deed conveys legal title to the mortgagee, although that title is conditional because it is subject to a right of defeasance retained by the mortgagor.  *Keybank Nat'l Ass'n v. Keniston*, 2023 ME 38, ¶ 15, 298 A.3d 800.  This error does not affect the issue presented on appeal because, for the reasons I discuss below, *see infra* ¶ 73 n.28, Finch is entitled to a discharge of the mortgage, which would extinguish U.S. Bank's legal title to the property.

challenged only the last of the aspects of the partial judgment I describe above. U.S. Bank acknowledged that, because it had lost the foreclosure action, it was precluded from pursuing any subsequent effort to collect on the note or foreclose on the property while Finch held the equity of redemption. U.S. Bank contended, however, that the mortgage is nonetheless not subject to discharge because, despite the remedial limitations resulting from the adverse judgment in the foreclosure case, it still retained title, which it would realize when, for example, the mortgagor dies or conveys the property to a third party. But in a separate case on appeal, and after oral argument in this case, the Court invited the submission of supplemental and amici briefs on the broader question of whether we should "reconsider . . . existing precedent"—meaning *Pushard* and *Deschaine*—that establishes that a mortgagee is barred from commencing a second foreclosure action after, in its first judicial effort to foreclose, it fails to prove that the notice of default complied with statutory requirements. It is this latter issue, framed by the Court, that now constitutes the centerpiece of its decision.

**B.**

[¶61]   In concluding that *Pushard* and at least significant parts of *Deschaine* should now be overturned, the essential analytical element invoked

44

by the Court is its view that future payments due under a promissory note secured by a mortgage on certain types of residential property cannot be accelerated by a notice of default if the notice does not meet the requirements of 14 M.R.S. § 6111.[22]  Court's Opinion ¶¶ 6, 26-27.  And, the Court reasons, if the mortgagee then fails in its judicial effort to collect on the note because the notice of default was defective, no preclusive effect can be assigned to the resulting judgment.  Court's Opinion ¶¶ 32-39.  As the Court puts it, "the parties are returned to the positions they occupied before the filing of the action."  Court's Opinion ¶ 39.  In other words, it's as if the first action never happened.

[¶62]  The analysis the Court adopts today, however, is *identical* to the one presented to us in *Pushard* by the trial court, *see Pushard v. Bank of Am., N.A.*, No. BCD-CV-15-28, 2016 WL 3509467, at *5 (Me. B.C.D. Mar. 15, 2016) (Horton, J.)—and *the very same analysis* that we rejected on appeal.  Further, the law the Court announces today adopts *the very same position* urged by the mortgagee in its brief on that appeal—an argument that, again, we rejected.  As much as the current Court may disagree with what we did in *Pushard* and

---

[22]  More particularly, by its own terms 14 M.R.S. § 6111 (2023) applies to efforts to foreclose on property that is the mortgagor's primary residence when the proceeds from the secured loan are used for personal, family, or household use.  Therefore, the Court's construction of the statute—and the decision it issues today—will be profoundly consequential to those whose mortgages are within its reach, namely, homeowners.

*Deschaine*, our determinations in those cases are—or were until today—the law in Maine.

[¶63]  In *Pushard*, instead of accepting the notion that a defective notice of default is equivalent to no notice at all and therefore does not have the power to accelerate the secured debt, we reaffirmed the established principle we had relied on some three months earlier in *Deschaine*, namely, that the commencement of a foreclosure action *is* a mechanism sufficient to accelerate all payments due.  *Pushard*, 2017 ME 230, ¶ 32, 175 A.3d 103; *Deschaine*, 2017 ME 190, ¶ 26, 170 A.3d 230.  And we reached that conclusion in *Deschaine*, not on a whim or out of whole cloth, but based on both case law from other jurisdictions and scholarship.  *See Pushard*, 2017 ME 230, ¶ 32, 175 A.3d 103; *Deschaine*, 2017 ME 190, ¶ 26, 170 A.3d 230.  Although the principle is reiterated in more contemporary case law, which we also cited, a passage from the latter is worth repeating here: "The institution of a suit for the whole debt is, of course, the most solemn form in which the holder can exercise his option. This is well recognized and it is, hence, generally held that the institution of a suit on the bills or notes is notice of the most unequivocal character that the holder wishes to avail himself of his option for acceleration."  C.T. Drechsler, Annotation, *What is Essential to Exercise of Option to Accelerate Maturity of Bill*

*or Note*, 5 A.L.R.2d 968 § 5[a] (1949). *See also Pushard*, 2017 ME 230, ¶ 32, 175 A.3d 103 (citing additional authority and an updated edition of the Annotation, supporting the same principle).

[¶64] The Court criticizes the opinions in *Pushard* and *Deschaine* for not taking into account what it views as the plain language and the procedural role of section 6111. Because, the Court now asserts, there can be no acceleration of the secured debt absent a statutorily compliant notice of default, the mortgagee has not met a *precondition* to the availability of judicial relief; any judicial process in that case is a nullity; and the unsuccessful outcome of that proceeding does not bar another action by the mortgagee for the same relief. Court's Opinion ¶¶ 32, 34.

[¶65] Although the Court now recasts a notice of default as little more than the predicate to suit, in *Pushard* we rejected that very contention. 2017 ME 230, ¶ 30, 175 A.3d 103. And more substantively, the Court's new view fundamentally changes the role of a notice of default as we had established that role in our jurisprudence. That substantial body of precedent identifies a proper notice of default not merely as a ticket for admission into the courtroom but as an actual substantive element of the mortgagee's case for foreclosure. *See, e.g.*, *Wilmington Tr., N.A. v. Berry*, 2020 ME 95, ¶ 9, 237 A.3d 167 (describing

a proper notice of default and right to cure as one of "the eight elements of proof necessary to support a judgment of foreclosure"); *Wilmington Sav. Fund Soc'y, FSB v. Abildgaard*, 2020 ME 48, ¶ 3, 229 A.3d 789 ("In order to prevail on a foreclosure action, a plaintiff must prove eight elements, including that it sent [the mortgagor] a proper notice of default and right to cure."); *First Fin., Inc. v. Morrison*, 2019 ME 96, ¶ 13, 210 A.3d 811; *Deutsche Bank Nat'l Tr. Co. v. Eddins*, 2018 ME 47, ¶ 14, 182 A.3d 1241 (stating that when the notice of default and right to cure is defective, the mortgagee fails "as a matter of law to prove a necessary element of its foreclosure claim," and the mortgagor is "entitled to judgment"); *U.S. Bank Tr., N.A. v. Mackenzie*, 2016 ME 149, ¶ 11, 149 A.3d 267 ("When in a foreclosure action a court determines that a notice of default and right to cure sent to the mortgagor is defective, that determination reaches the merits of the claim for foreclosure."); *Tannenbaum*, 2015 ME 141, ¶ 5, 126 A.3d 734 ("As we have held explicitly, a notice of default that comports with the requirements of section 6111 is a substantive element of proof in a foreclosure action.") (also concluding that the mortgagee's failure to prove a proper notice results in a "final judgment on the merits" for the mortgagor); *Wells Fargo Bank, N.A. v. Girouard*, 2015 ME 116, ¶ 7, 123 A.3d 216 (identifying a proper notice of default as one of "the elements that . . . define a foreclosure claim and that a

mortgagee therefore must prove in order to obtain a judgment of foreclosure");

*Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700 (enumerating "the

eight elements of proof to support a judgment of foreclosure," which include a

proper notice of default and right to cure); *Chase Home Fin. LLC v. Higgins*, 2009

ME 136, ¶ 11, 985 A.2d 508.[23]  Indeed, even today the Court acknowledges this

principle by referring to a properly framed notice of default and right to cure as

an "element" of proof.  *See* Court's Opinion ¶ 8.

[¶66]  Precisely because a proper notice of default and right to cure is a

substantive element of proof, if the notice does not satisfy statutory

requirements, the mortgagor is entitled to judgment on the merits.  *See*

*Morrison*, 2019 ME 96, ¶ 13, 210 A.3d 811; *Mackenzie*, 2016 ME 149, ¶ 11 & n.6,

149 A.3d 267.  In fact, as we have said, a court errs by merely dismissing a

---

[23] The Court asserts that a mortgagee's failure to prove a proper notice of default and right to cure is "akin" to the failure to prove ownership of the note.  Court's Opinion ¶ 32 n.9.  In the Court's view, because of that claimed similarity, because the first situation results in a dismissal of the action without prejudice, so too does the second.  *Id.*  This, however, conflates the concept of standing, which is predicated on the ownership of the instruments, with the entitlement to relief that the proper party may pursue.  As we have stated a number of times, standing is a "threshold concept" essential to identifying the party that has a justiciable claim.  *Bank of Am., N.A. v. Greenleaf*, 2015 ME 127, ¶¶ 8-9, 124 A.3d 1122 (quotation marks omitted); *see also Bank of N.Y. v. Dyer*, 2016 ME 10, ¶ 11, 130 A.3d 966; *Wells Fargo Bank, N.A. v. Girouard*, 2015 ME 116, ¶ 8 n.3, 123 A.3d 216; *Homeward Residential, Inc. v. Gregor*, 2015 ME 108, ¶¶ 23-24, 122 A.3d 947.  Proof by the mortgagee that it owns the note and mortgage establishes that the court has jurisdiction to adjudicate the merits of the claim—in other words, that the claim is justiciable because the court would then be authorized to grant relief to that claimant if the evidence were to support the elements of the claim.  *Girouard*, 2015 ME 116, ¶ 8 n.3, 123 A.3d 216.  Here, it is undisputed that U.S. Bank has standing because it owned the note and mortgage.  Its 2010 foreclosure action was therefore justiciable, and, pursuant to our case law, the court properly proceeded to adjudicate the claim on its merits and ultimately entered a judgment.

foreclosure action when the notice of default and right to cure is deficient, unless the dismissal is with prejudice. *See Morrison*, 2019 ME 96, ¶ 13, 210 A.3d 811; *Mackenzie*, 2016 ME 149, ¶ 11 & n.6, 149 A.3d 267; *Girouard*, 2015 ME 116, ¶ 11, 123 A.3d 216. Instead, in that situation, the proper disposition of the case is the entry of a judgment on the merits for the mortgagor. *Mackenzie*, 2016 ME 149, ¶ 11 & n.6, 149 A.3d 267; *Girouard*, 2015 ME 116, ¶ 11, 123 A.3d 216. By issuing a notice of default and right to cure and then commencing an action for the accelerated amount, it is the mortgagee that places the entire amount in issue.[24] If the action is unsuccessful, that is the end of the matter, just as in any court proceeding.[25]

---

[24] As we stated in *Deschaine*, the allegation by a mortgagee in its foreclosure complaint—which is "subject to the requirements of M.R. Civ. P. 11(a)—that it had declared the entire unpaid principal balance to be due immediately . . . establishes that it exercised its right to accelerate the underlying debt on the note, and it may not now argue otherwise." *Fed. Nat'l Mortg. Ass'n v. Deschaine*, 2017 ME 190, ¶ 27, 170 A.3d 230. Now the Court rejects that conclusion and holds that even when a mortgagee—still being held to the standard of good-faith pleading—asserts that it had accelerated that debt, it is not bound by the effects of such an assertion if made incorrectly, even within the solemn context of a judicial proceeding. This is yet another aspect of *Deschaine* that the Court overturns.

[25] Despite the Court's assertion, Court's Opinion ¶ 38, landlords should harbor no fear from our decisions in *Pushard* and, by extension, *Deschaine*. In an action for forcible entry and detainer, a landlord does not seek to accelerate future rent payments or other tenant obligations that have not yet arisen. In fact, more relevant to foreclosure actions, as we explained in *Deschaine*, 2017 ME 190, ¶ 27 n.8, 170 A.3d 230, even a mortgagee that participates in a case involving a secured debt that it had *not* accelerated is not precluded from later commencing a foreclosure action. *See Wilmington Tr. Co. v. Sullivan-Thorne*, 2013 ME 94, ¶ 12 n.4, 81 A.3d 371. The same is true in actions for breach of contract, despite the Court's concern. *See* Court's Opinion ¶ 38.

[¶67]  Several of our decisions illustrate this point clearly.  In *JPMorgan Chase Bank, N.A. v. Lowell*, 2017 ME 32, 156 A.3d 727, we held that the trial court's entry of judgment for the mortgagee was error because the evidence established that the notice of default and right to cure was deficient as gauged by the requirements of section 6111.  *Id.* ¶¶ 19-21.  On that basis, we vacated the judgment and remanded for entry of a new *judgment* for the mortgagor.  *Id.* ¶ 21.  Another case, *Eddins*, presented the same situation—because the notice of default did not comply with the statutory requirements, we vacated the judgment that the trial court had entered for the mortgagee and remanded for *judgment* to be entered in favor of the mortgagor.  2018 ME 47, ¶ 14, 182 A.3d 1241.

[¶68]  And even more pointedly, in *Tannenbaum*, the trial court took a different approach, favorable to the mortgagee, that we rejected.  After finding that the mortgagee had failed to prove that the notice of default and right to cure met the statutory requirements, the court entered judgment for the mortgagor but explicitly reserved to the mortgagee the right to relitigate its foreclosure claim in a future action.  2015 ME 141, ¶¶ 3, 6, 126 A.3d 734.  The court concluded that, because the notice was defective, the mortgagee had not been entitled to pursue its foreclosure action in the first place and included the

limitation in the judgment in order to obviate any preclusive effect arising from it.  *Id.* ¶¶ 6, 9.  On appeal, we affirmed the basic judgment but stripped it of the limitation.  *Id.* ¶ 10.  In doing so, we explained that a judgment entered against a mortgagee arising from a failure to prove its claim does not provide the trial court with a basis to specify that the losing claimant may bring another action for the same relief.  *Id.*  As we explained, a judgment based on the failure of proof—specifically, a defective notice of default and right to cure—is a judgment on the merits, and a court has no authority "to transform a final judgment on the merits into a decision tantamount to a dismissal without prejudice, simply by stating that the parties may relitigate the issues in a future proceeding." [26]  *Id.* ¶¶ 9-10.  But that is just what the Court does today.

[¶69]  All of this leads directly to the conclusion we reached in *Pushard*: that a mortgagee's failure to have issued a proper notice of default and right to

---

[26] Although we concluded that the trial court was without authority to prospectively declare that the mortgagee could commence another action despite losing the first on the merits, we explicitly did not reach the question of whether conventional principles of res judicata would bar a second action because the preclusion issue is not justiciable unless and until the mortgagee actually commences a second action.  *U.S. Bank, N.A. v. Tannenbaum*, 2015 ME 141, ¶ 6 n.3, 126 A.3d 734; *see also Girouard*, 2015 ME 116, ¶ 10, 123 A.3d 216.  *Tannenbaum* nonetheless confirms and ratifies the principle—which the Court today abandons—that when a mortgagee fails to prove its case, the court is obligated to enter a substantive judgment on the merits against the mortgagee, thereby letting the tenets of res judicata determine the viability of a future duplicative action, rather than an order that is equivalent to a mere dismissal of the complaint without prejudice.

52

cure is substantively fatal to a foreclosure claim, *on its merits*. 2017 ME 230, ¶¶ 30, 36, 175 A.3d 103.

[¶70] On the basis of these established principles, we have explicitly rejected the equivalence drawn today by the Court between a defective notice of default and a mere statutory precondition of suit that, if not perfected, would prevent the trial court from entering an order on the merits with preclusive adjudicatory effects. In *Girouard*, we rebuffed the contention that the defective notice is procedurally comparable to a claimant's failure to comply with, say, the required pre-suit process applicable to medical negligence claims. 2015 ME 116, ¶¶ 8, 11, 123 A.3d 216. As we discussed in *Girouard*, if a malpractice claimant does not follow the necessary pre-suit statutory procedure, then the court does not have the authority to reach and adjudicate the claim regardless of the claim's merit, a conclusion we had announced in *Dutil v. Burns*, 1997 ME 1, ¶ 7, 687 A.2d 639. *Girouard*, 2015 ME 116, ¶ 8, 123 A.3d 216. In *Girouard*, we explained that, in contrast, proof in a foreclosure action of a proper notice of default *is* included among the merits of the foreclosure claim. *Id.* ¶¶ 8-9. That is why the mortgagee's failure to prove that element necessarily results in a judgment against the mortgagee on the merits and not just a dismissal that—as

in a *Dutil*-type case—would have no future preclusive consequence. *Id.* ¶¶ 9, 11.

[¶71] By recharacterizing a notice of default as a mere precondition of suit, the Court undermines these lines of precedent. Going forward, a court's order in these circumstances—even when it purports to be a judgment on the merits—will now be, in essence and effect, a dismissal without prejudice because the mortgagee will now be entitled to commence another action, free of any preclusive consequence that *should* arise from the outcome of the first proceeding. This is directly contrary to the law as we have stated it multiple times.[27]

[¶72] There is one more way in which the Court's decision runs counter to established foreclosure law. We have stated, repeatedly and for decades, that in order to obtain foreclosure relief, a mortgagee must prove that it has strictly

---

[27] The Court criticizes our decisions in *Pushard* and, implicitly, *Deschaine*, for not following the provisions of the Restatement and Maine case law, which both state that a preclusive effect does not arise from a judgment based on a failure by the claimant to satisfy a precondition to suit. Court's Opinion ¶¶ 29-32 & n.10 (discussing Restatement (Second) of Judgments § 20(2) (Am. L. Inst. 1982) and *Dutil v. Burns*, 1997 ME 1, 687 A.2d 639). The Court's complaint, however, is undermined by the substantial body of Maine law, which I recount in the text, *see supra* ¶¶ 65-68, establishing that a proper notice of default and right to cure is a substantive element of proof that the mortgagee must establish at trial. It is further undercut by our analysis in *Girouard*, 2015 ME 116, ¶¶ 8-9, 11, 123 A.3d 216, which I also discuss in the text, *see supra* ¶¶ 69-71, that distinguishes *Dutil* by explicitly holding that the effect of a judgment for the mortgagor based on a defective notice of default and right to cure—because it is a judgment on the merits—should not be confused with a judgment that results from failing to meet a procedural precondition to suit, as was the case in *Dutil*. *Girouard* is consequently another casualty of today's decision.

complied with the requirements of the law. *See Pushard*, 2017 ME 230, ¶ 4, 175 A.3d 103; *Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700; *Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508; *Camden Nat'l Bank v. Peterson*, 2008 ME 85, ¶ 21, 948 A.2d 1251; *Winter v. Casco Bank & Tr. Co.*, 396 A.2d 1020, 1024 (Me. 1979); *see also U.S. Bank, N.A. v. Gordon*, 2020 ME 33, ¶ 29, 227 A.3d 577 ("Due to the inherently draconian consequences of foreclosure and for other reasons, we should, and we do, require strict compliance by the plaintiff in any foreclosure action . . . .") (Horton, J., concurring). But by today's decision, the Court renders that criterion a hollow one. True, within the confines of a single proceeding the mortgagee could still be held to that standard. But if a mortgagee fails to prove that the notice of default satisfied the prescriptions of the law and consequently suffers an adverse outcome in a particular case, the mortgagee can simply file another complaint and try again. And again. And again. Until the mortgagee is able to get it right. Or until the mortgagor's ability—financial and otherwise— to resist the claim is expended and exhausted. And all at the expense of limited and precious judicial resources.

[¶73] In this case, we should—as we have done many times before— treat the judgment previously entered against U.S. Bank as preclusive of any opportunity for it to seek the same relief again. Our decisions in *Pushard* and

*Deschaine* have settled that issue. In my view, the Court errs by overruling them.[28]

## C.

[¶74] As I have discussed, the Court today does more than overturn *Pushard* and at least a substantial part of *Deschaine*; the direct effects of its decision extend to and call into serious question multiple lines of cases as well as well-established principles of our foreclosure jurisprudence. These far-reaching ramifications of the Court's decision require an examination of whether its choice to depart from established law is consistent with

---

[28] Because the Court determines that the flawed notice of default and right to cure rendered the first action a nullity, it does not reach the primary question U.S. Bank presented in its initial round of briefs, *see supra* ¶ 60, namely, whether the loss of its right to seek monetary relief based on the promissory note and the limits on its claim of title resulting from the adverse judgment in its foreclosure action also mean that Finch is now entitled to a discharge of the mortgage.

In my view, Finch is entitled to that relief, just as *Pushard* and *Deschaine* provide. In its partial judgment, the trial court correctly determined that not only is U.S. Bank barred from seeking recovery on the note (which U.S. Bank conceded in its initial briefs on this appeal) but that U.S. Bank is required to record the discharge (as it has now done). Those results were compelled by *Deschaine* and *Pushard.* In each of those cases, we held that when the secured debt becomes unenforceable after a judgment is entered against a mortgagee in a foreclosure action, the property is no longer encumbered by that security and the mortgagor owns the property free and clear of the mortgage deed. *See Pushard*, 2017 ME 230, ¶ 36, 175 A.3d 103; *Deschaine*, 2017 ME 190, ¶ 37, 170 A.3d 230. Contrary to U.S. Bank's contention, those determinations were not dicta but rather constituted holdings because they addressed substantive claims for relief that the mortgagors had asserted. *See Pushard*, 2017 ME 230, ¶ 5, 175 A.3d 103; *Deschaine*, 2017 ME 190, ¶ 9, 170 A.3d 230. Therefore, pursuant to that case law and to 14 M.R.S. § 6206 (2023), because the judgment entered against U.S. Bank in its foreclosure action extinguished Finch's liability under the secured note, nothing was left due, thereby entitling Finch—in the words found in section 6206—to "hold the land discharged of the mortgage." I recognize that nearly a century and a half ago we suggested, in conclusory terms, a contrary reading of a similar statute, *see Mason v. Mason*, 67 Me. 546, 548 (1878), but the effects of *Pushard* and *Deschaine*, combined with the plain language of section 6206, support the conclusion I draw here.

56

fundamental and critical principles of stare decisis.  In my view, it manifestly is not.

[¶75]  The law builds on itself.  Judicial respect for precedential authority is essential for that linear development and for stability; to allow members of the public to reasonably rely on the content of the law so they can act properly and plan sensibly; and to promote confidence in the law and the judiciary itself by preventing it from appearing arbitrary.  *See Bank of N.Y. Mellon v. Shone*, 2020 ME 122, ¶ 54, 239 A.3d 671 (Hjelm, A.R.J., dissenting); *McGarvey v. Whittredge*, 2011 ME 97, ¶ 63, 28 A.3d 620 (Levy, J., concurring) ("Even when we have a certain 'unease' with the analysis of a prior decision, we do not overrule the decision without a compelling and sound justification.").  Placing weight on past judicial determinations also reflects "a basic humility that recognizes today's legal issues are often not so different from the questions of yesterday and that we are not the first ones to try to answer them." *June Med. Servs. L.L.C. v. Russo*, 591 U.S. ---, 140 S. Ct. 2103, 2134 (2020) (Roberts, C.J., concurring).

[¶76]  Although stare decisis does not trap precedent in amber, the rationale offered today by the Court for making such a fundamental and abrupt change in the law comes nowhere close, in my view, to overcoming the restraint

and circumspection we should have in order to take such a consequential step. An assessment of factors relevant to respecting and applying precedent proves this point.

[¶77]  There has been no change in the surrounding law—statutory or otherwise—warranting the Court's repudiation of its prior decisions.  Indeed, nearly every case and each secondary authority cited by the Court predate our decisions in *Pushard* and *Deschaine.*

[¶78]  The Court's jurisprudence has not become antiquated—the two cases at issue were decided in 2017.  Although the holdings in *Pushard* and *Deschaine* may constitute the minority view nationally,[29] they are supported by authority and legal analysis articulated in those opinions, and they represent the considered, contemporary, and unanimous determinations of this Court, rendered twice.  In this context, I note that the Court's 2014 decision on standing in *Greenleaf*—holding that the power granted to the lender's nominee only to *record* a mortgage does not create a right in the nominee to *assign* the mortgage, 2014 ME 89, ¶¶ 15-16, 96 A.3d 700—also appears contrary to the law of many or most jurisdictions, *see Gordon*, 2020 ME 33, ¶¶ 19, 24, 26, 227

---

[29]  A minority, yes, but we are not alone.  *See U.S. Bank Nat'l Ass'n v. Gullotta*, 899 N.E.2d 987, 990-94 (Ohio 2008); *Cenlar FSB v. Malenfant*, 151 A.3d 778, 793-99 (Vt. 2016) (Dooley, J., dissenting); *see also* Megan Wachspress et al., Comment, *In Defense of "Free Houses,"* 125 Yale L.J. 1115 (2016).

A.3d 577 (describing *Greenleaf* as contrary to the "modern majority rule") (Horton, J., concurring). As I have discussed above, *see supra* ¶¶ 65, 72, aspects of *Greenleaf* will now be called into question by the Court's decision in this case. Nonetheless, *Greenleaf*'s holding on standing, which is the core of the decision and the reason the case is important, remains entirely intact, even though it may not be in the mainstream and even though it has faced an explicit call from within the Court to abandon its standing analysis. *See Gordon*, 2020 ME 33, ¶¶ 24-30, 227 A.3d 577 (Horton, J., concurring).

[¶79] Beyond those factors, which clearly support staying the course, the most troubling aspects of the Court's discussion of stare decisis center on its claims, first, that *Pushard* and *Deschaine* are unfair to lenders and others in the mortgage industry, and second, that any reliance by homeowners on our pronouncements in those cases has been misplaced. Court's Opinion ¶¶ 46, 50.

[¶80] The view that the effects of *Pushard* and *Deschaine* are too harsh on mortgagees[30] illustrates how easily the Court is now willing to overrule precedent based in part on its own value judgment that we have already considered and rejected. *See Myrick v. James*, 444 A.2d 987, 1000 (Me. 1982)

---

[30] It bears noting, however, that even one of the amici advocating for the interests of mortgagees—the Maine Bankers Association—asserts that, if a second foreclosure action is barred by an unsuccessful first action, the mortgagor should be entitled to a discharge of the mortgage and acquire title to the property.

(stating that the justification for overruling precedent requires more than "the commitment of the individual justices to their mere personal policy preferences"). In *Deschaine*, we explicitly addressed the view now adopted by the Court, which was the mortgagee's assertion that as a result of our debt-acceleration and claim-preclusion jurisprudence, the mortgagor would end up with a "free" house—a result the mortgagee claimed was disproportionate to the reason it did not prevail in the foreclosure action. 2017 ME 190, ¶¶ 32-34, 170 A.3d 230. We found this contention unpersuasive, and we explained why. As we stated there, the "salutary purposes" of claim preclusion—judicial economy, conservation of limited court resources, and the prevention of serial litigation—and intolerance of repeated unacceptable foreclosure litigation practices by mortgagees and their attorneys outweigh the equities claimed by the mortgagee. *Id.*; *see also Pushard*, 2017 ME 230, ¶ 35, 175 A.3d 103.

[¶81] Now, the Court simply prefers a different balance. The Court describes the outcomes that result from our existing law as "disproportional and draconian." Court's Opinion ¶ 5; *see also id.* ¶ 49 (referring to a "draconian windfall outcome"). In *Deschaine*, however, we spoke on this very issue and

60

rejected what is now the Court's new view.[31]  2017 ME 190, ¶¶ 32-34, 170 A.3d

230.  The superior position that mortgagees enjoy in foreclosure actions is

evident because they are in a uniquely controlling position to do what needs to

be done—and done properly—in order to obtain relief in the courts.  That is

their business.  They and their counsel are sophisticated and knowledgeable

---

[31]  The Court makes reference to legislation, enacted after we issued our decisions in *Deschaine* and *Pushard*, that imposes on mortgage servicers a duty of good faith and authorizes the courts, in their discretion, to impose consequences when that duty is violated.  Court's Opinion ¶ 47 (discussing 14 M.R.S. § 6113 (2023)).  It appears that, in the Court's view, this statutory reform diminishes the justification for barring successive foreclosure actions pursuant to principles of claim preclusion.  To the contrary, I read this legislative development as an enhancement of borrower protection—a signal that the Legislature sees the need for *more* restraint on mortgagees and their agents based on the same kinds of concerns about improper practices conducted by mortgagees, their servicers, and their attorneys that led, in part, to the determination we articulated in *Pushard* that the preclusive effect resulting as a matter of law from prior unsuccessful litigation should not be relaxed.  2017 ME 230, ¶ 35, 175 A.3d 103; *see also Deschaine* 2017 ME 190, ¶¶ 32-34, 170 A.3d 230.

While amending 14 M.R.S. § 6113 to address problematic behavior by mortgage servicers, the Legislature made no changes to section 6111 itself in a way that would signal any disagreement with the way we had construed and applied that statute in *Deschaine* and *Pushard*.  Although we have stated that significance should not be attached to legislative *inaction*, *Mahaney v. Miller's, Inc.*, 669 A.2d 165, 169 (Me. 1995), that approach may be subject to some nuance here.  Two years after we issued our decisions in *Deschaine* and *Pushard*, the Legislature amended section 6111 to tighten the requirements for the way notices of default are provided to mortgagors.  *See* P.L. 2019, ch. 361, §§ 1, 2 (effective Sept. 19, 2019).  Thus, the Legislature was paying attention to that statute, which is central to the case at bar.  Notwithstanding the caution we expressed in *Mahaney* about legislative silence, we presume that the Legislature bears "in mind" our decisions when it enacts statutes.  *Finks v. Me. State Highway Comm'n*, 328 A.2d 791, 797 (Me. 1974); *see also Gen. Motors Acceptance Corp. v. Anacone*, 160 Me. 53, 78, 197 A.2d 506, 521 (1964) (explaining that "a statute enacted after a judicial construction is presumed to take that construction").  The 2019 amendment adding entirely new provisions to section 6111 may arguably be treated as an enactment, which means that when the Legislature did so, it was mindful of the way we had construed other elements of that same statute in *Deschaine* and *Pushard* —and did nothing to override our view.  But, in my view, even if the enactment that resulted in the 2019 amendment to section 6111 does not bring the issue presented here within the ambit of *Finks*, because we have already announced the way we read section 6111 it is now the Legislature, and not the judiciary, that should be the appropriate entity to make any substantive changes to the meaning and application of its statutes.  The ball, in other words, is in the Legislature's court, not ours.

players in a specialized field. They, or the servicers they select to administer the secured loan accounts, create, possess, and maintain the records containing information about the history and status of the accounts. They, or their servicers, generate and issue the notices of default and right to cure. They choose when to commence the court action. And they are the ones to present their proof in court.[32] Those parties should be held responsible for marshaling and presenting a case that meets the requirements of the law, just as *any* litigant seeking relief must do.

[¶82] The Court adopts the view that a foreclosure trial has become a "court-as-casino." Court's Opinion ¶ 46. If so, it is the mortgagee that holds all the cards.

[¶83] Now, by fundamentally altering the law to diminish the effects of legally consequential mistakes made by mortgagees, the Court creates a special, privileged class of litigant—one whose members will no longer suffer the preclusive consequences of a deficient case, unsuccessfully presented.[33] The

---

[32] And all of this must be seen against the backdrop of the nature of the initial transactions between the secured lenders and homeowners, which are embodied in "contracts of adhesion because their terms are selected by professional lenders for unsophisticated borrowers who have no choice but to accept the lenders' terms or forego purchasing their home." Shelley Smith, *Reforming the Law of Adhesion Contracts: A Judicial Response to the Subprime Mortgage Crisis*, 14 Lewis & Clark L. Rev. 1035, 1040 (2010).

[33] That imbalance will now be present even as between the parties to a foreclosure proceeding because mortgagors will not have the opportunity for a do-over, as mortgagees will now have. *See*

Court's decision, in other words, will create a windfall *for mortgagees*—an outcome we explicitly rejected, after full consideration, in *Pushard*.[34]  2017 ME 230, ¶ 35, 175 A.3d 103; *see also Deschaine* 2017 ME 190, ¶¶ 32-33, 175 A.3d 230.

[¶84]  The second of these remaining stare decisis considerations is reliance on our clear precedent and the disruption that will result from casting aside settled law.  The Court today utterly discounts the effects of any reliance by mortgagors on our established law that it now overrules because, the Court

---

*Harriman v. Border Tr. Co.*, 2004 ME 28, ¶¶ 4-7, 842 A.2d 1266 (affirming the dismissal of a complaint by a borrower seeking title to and possession of real property lost in a foreclosure action because the action was barred by res judicata, and imposing sanctions because the borrower had filed multiple complaints with no reasonable prospect of success); *Rohe v. Wells Fargo Bank, NA*, No. 21-10561, 2022 WL 17752372, at *1, 3 (11th Cir. 2022) (holding that a borrower was barred from litigating a claim that that the mortgagee did not own the mortgage when that claim had already been litigated and adjudicated in a state foreclosure proceeding).

[34]  As has been insightfully explained, when a mortgagee pursues a foreclosure action and suffers an adverse judgment,

> Well-established legal principles seem to provide a clear answer: the homeowner keeps her house, and res judicata bars any future suit to foreclose on the home.  Yet state courts around the country resist this outcome.
>
> . . . .
>
> . . . [C]ourts are afraid to bar future attempts to foreclose—that is, afraid of giving borrowers "free houses."  While courts rarely explain the reasoning behind this aversion, it seems to arise from a reflexive belief that such an outcome would be unjust.  Courts are therefore quick to sidestep well-established principles of res judicata in favor of ad hoc measures meant to protect banks against the specter of "free houses."

Wachspress at 1115-16 (footnote omitted).

asserts, that law is of "recent vintage"—a reference to it having been articulated only in 2017—and it has not been reasonable for mortgagors to rely on the "hope [of a] windfall."  Court's Opinion ¶ 46.  Respectfully, these assertions are specious.

[¶85]  In 2017, we described—loudly and clearly—the legal effects on mortgagees *and mortgagors* of judgments in foreclosure cases adverse to the former.  Aren't members of the public entitled to rely on those pronouncements issued by Maine's highest court?  And, perhaps more importantly, don't we *want* people to rely on our pronouncements?  As I note above, our judicial process is built on the foundation of stare decisis so that people can act, plan, and order their affairs within the bounds of the law, which are society's rules of the road.  We *should* want the public to take seriously the determinations we are called upon to make.  It is extraordinary for the Court to now say that people who make decisions in reliance on clear and explicit guidance emanating from our case law do so at their peril.  The Court diminishes its standing through such an assertion.

[¶86]  Consider the impact of today's decision.  It is inconceivable to me that, since we issued our decisions in *Pushard* and *Deschaine* in 2017, there are no mortgagors who have made important and entirely reasonable decisions

about their finances, their estates, and their property, carrying significant consequences, in reliance on our authoritative pronouncements. What now becomes of them? Will today's reversal of clear precedent be applied retroactively so that those mortgagors who have moved forward in their financial lives will now be exposed to further litigation they could not have planned or anticipated? Can discharged mortgages be reinstated given that the reason that led to the discharges is now nullified? And if, in order to avert this considerable uncertainty, the Court's decision applies only prospectively, don't there arise two very different sets of rules, separated only by the arbitrariness of today's decision date? These are questions of great importance to people and entities—not to mention the trial courts themselves—that will be affected by the Court's decision. But it would be inappropriate for the Court to address them today given that the breadth of the application of today's decision is not before the Court in this case, so uncertainty and anxiety are amplified.

[¶87] And, even beyond all of this, what if some future iteration of the Court concludes that our decisions in *Pushard* and *Deschaine* were correct after all? Should the members of *that* Court feel constrained to honor today's decision as precedent, given that this Court does not do so with *Pushard* and *Deschaine*?

[¶88] All of these dynamics will only augment uncertainty in people's lives and make it difficult, if not impossible, for them to act and plan in an informed way, while any adjudication of these and other related questions must await a future case on another day. And that uncertainty will not be limited to people and entities who are participants in mortgage transactions. The Court's startling warning about the risks of relying on its decisions can only carry over to other, unrelated areas of the law presented across the breadth of its jurisdiction.

**D.**

[¶89] I recognize that reasonable minds may differ regarding issues the Court is called upon to decide. That is the nature of the judicial process given that, by definition, cases that come to us are generated by conflicting views of the matters presented. As one Supreme Court justice has noted, "We are not final because we are infallible, but we are infallible only because we are final." *Brown v. Allen*, 344 U.S. 443, 540 (1953) (Jackson, J., concurring). But the issue presented here is not one of first impression. Rather, we made our determinations in *Pushard* and *Deschaine* as "the product of deliberate and solemn analysis." *See Shaw v. Jendzejec*, 1998 ME 208, ¶ 8, 717 A.2d 367. While one is free to disagree with what we did less than seven years ago, the Court

errs by casting aside significant determinations of law rendered in analytically interlocking cases, thereby also raising significant questions about the viability of entire lines of our foreclosure decisions.

[¶90] The sweep of the jurisprudential debris field that the Court creates today—what it minimizes, astonishingly, as merely a "course correction," Court's Opinion ¶ 50 n.17—should not be underestimated. *Deschaine* and, perhaps even more so, *Pushard* comprise the direct and most visible fallout. But as I have discussed, other cases and lines of holdings within the ecosystem of foreclosure law are now exposed to reconsideration, revision, and rejection. The uncertainty today injected into foreclosure law is augmented to an even greater extent by the Court's relaxation, several years ago, of the previously established standard for admissibility of records that are often central to a mortgagee's ability to prove its foreclosure case. *See Shone*, 2020 ME 122, ¶¶ 15, 19, 29-30, 239 A.3d 671. In my view, the Court's decision today is a retreat from principles of judicial restraint and modesty and from the protections that stare decisis provides to the public as a column of stability and predictability in the law. And now that the bar given to precedential weight has been lowered, I submit that the willingness of the Court, as currently composed, to overturn considered and entrenched legal precedent it might simply have

decided differently may raise questions among the public about the extent to which it will feel restrained in departing from precedent in other areas of the law.

[¶91] The judgment of the trial court, which was faithful to and indeed required by Maine's good and settled law, should be affirmed. Respectfully but insistently, I dissent.

---

Morgan T. Nickerson, Esq. (orally), and Emily E. Gianetta, Esq., K&L Gates LLP, Boston, Massachusetts, for appellant U.S. Bank, N.A.

John D. Clifford, IV, Esq. (orally), Clifford & Golden, PA, Lisbon Falls, for appellee Charles D. Finch

Androscoggin County Superior Court docket number RE-2016-4
For Clerk Reference Only